COULTER, Auditor, v. WEIR.

(Circuit Court of Appeals, Sixth Circuit. February 13, 1904.)

No. 1,224.

1. CORPORATIONS — FRANCHISE TAX — INJUNCTION—STATE OFFICERS — FEDERAL COURTS—JURISDICTION.

Ky. St. 1903, § 4077 et seq., provides for the imposition of a franchise tax on the intangible property of certain corporations, a part of which is payable directly into the state treasury and the balance made apportionable to certain counties and cities; the value of such franchise being fixed by a board consisting of state officers. Section 4084 requires the State Auditor, after 30 days from the valuation of the franchise, to certify to the county clerk of the counties, etc., the portion apportionable to them as therein provided; and section 4091 requires the auditor to give final notice of the tax assessed for state purposes, which becomes due 30 days thereafter, but the auditor has no authority to coerce the payment of the tax. *Held*, that where the valuation of a corporation's franchise had been made by the state board, and the auditor had given final notice thereof before suit was brought against him in his official capacity to restrain the collection of such tax, the bill was not maintainable as to the part of the tax due the state, since as to it the bill was, in effect, against the state, which was not subject to suit without its consent under Const. U. S. Amend. 11.

2. SAME—MULTIPLICITY OF SUITS.

Where it was alleged that the tax was void, and that, unless restrained, the auditor would certify the tax to the various counties and municipalities in the state, which would result in a multiplicity of suits by defendant to restrain the collection of the tax, the bill was maintainable against the auditor, as an official, to restrain such act.

3. SAME—STATUTES—CONSTITUTIONAL LAW—INTERSTATE COMMERCE.

Ky. St. 1903, § 4077 et seq., imposing an alleged franchise tax on corporations which, in effect, is not a franchise tax, but a tax on the intangible property of the corporation not otherwise taxed, is not unconstitutional in its application to an interstate express company as an unwarrantable interference with interstate commerce.

4. SAME—CONSTRUCTION.

Ky. St. 1903, §§ 4078–4080, making it the duty of corporations mentioned in section 4077 to furnish certain data by which the value of their intangible property may be ascertained for taxation, and declaring that, when the value of the capital stock is ascertained, the value of all tangible property otherwise taxable shall be deducted, is applicable as well to corporations and companies organized under the laws of other states as those existing under the laws of Kentucky.

5. SAME—DEDUCTION OF TANGIBLE TAXABLE PROPERTY.

Under Ky. St. 1903, § 4079, providing that in the determination of the amount of a corporation's intangible property for franchise taxation the value of all tangible property otherwise taxable shall be deducted from the value of the corporation's capital stock ascertained by including every element contributing to value, whether tangible or intangible, the tangible taxable property to be deducted is not limited to such as is situated within the state of Kentucky, but includes all tangible property belonging to the corporation wherever located.

6. SAME—ERRONEOUS VALUATION—REMEDIES.

Where it was contended in a suit to restrain the collection of a corporate franchise tax that, if the board of valuation and assessment, in making the assessment in the method pursued in taxing the corporation's intangible property assessable in the state, followed the statute, the stat-

¶ 1. Federal jurisdiction of suits against state, see note to 13 C. C. A. 165.

127 F.—57

ute was unconstitutional, and that, if they did not follow the statute, the corporation had a remedy to correct the error, the question was not a mere question of excessive valuation within the exclusive jurisdiction of the board, and was subject to review by the courts.

7. SAME.

Where, in determining the value of an express company's intangible property legally taxable in Kentucky, the board of valuation ignored, in valuing the company's shares, the existence of intangible property outside of Kentucky, consisting of an outside investment of surplus earnings, which the company offered to prove was not used in, and did not constitute a part of, its general express business, which investment consisted of railroad bonds, etc., actually held in New York, the valuation was erroneous.

8. SAME.

An express company having accumulated a surplus of more than $12,-000,000, separated such amount from its business, and invested it in bonds, stock, etc., which the company transferred to a trust company in New York, and then issued to its stockholders, as a distributive share thereof, bonds of the express company at par, payable only out of the securities so deposited as a special dividend, the express company retaining certain property rights in the securities, by which, in certain contingencies, creditors might reach them. *Held,* that such bonds and stocks so transferred to the trust company constituted an outside investment of surplus earnings which could not be included in an estimate of the value of the express company's intangible property taxable in Kentucky.

Appeal from the Circuit Court of the United States for the Eastern District of Kentucky.

This is a bill challenging the validity of a tax assessment made by the state of Kentucky against a joint-stock company in the nature of a co-partnership doing business in the state of Kentucky under the name and style of the Adams Express Company. The taxes assessed were for three years, 1899, 1900, and 1901. The valuations and assessments complained of were made by a board of valuation and assessment, created under section 4077, Ky. St. 1903, consisting of the Auditor, Treasurer, and Secretary of State. To this board is committed the sole duty of assessing certain corporations and companies in the nature of corporations, such as the complaining express company. These assessments were made under color of an act passed November 11, 1892, being chapter 108, § 4019 et seq., Ky. St. 1903.

Section 4020 subjects to taxation all property within the state, whether belonging to individuals or corporations, "including intangible property, which shall be considered and estimated in fixing the value of corporate franchises as hereinafter provided," unless exempted by the state Constitution. The bill avers that in accordance with this provision all of the tangible property of complainants within the state had been assessed, and the taxes paid, and that no complaint is made thereof.

Section 4077 subjects a large class of corporations, companies, or associations, including express companies, to further taxation by providing that every "corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the state, and a local tax thereon to the county, city, town and taxing district, where its franchise may be exercised." The Auditor, Treasurer, and Secretary of State are then constituted a board for valuing and assessing said franchise, and for apportioning to the several municipalities in which such franchise is situated their respective shares in the taxable value so ascertained.

In view of the fact that the construction of the law under which these assessments were made is involved, we set out below sections 4078 to 4083, inclusive, of the Kentucky Statutes of 1903:

"Sec. 4078. In order to determine the value of the franchises mentioned in the next preceding section, the corporations, companies and associations men-

tioned in the next preceding section, except banks and trust companies, whose statements shall be filed as hereinafter required by section four thousand and ninety-two of this article, shall annually between the fifteenth day of September and first day of October, make and deliver to the Auditor of Public Accounts of this state a statement, verified by its president, cashier, secretary, treasurer, manager, or other chief officer or agent, in such form as the auditor may prescribe, showing the following facts, viz.: The name and principal place of business engaged in; the amount of capital stock, preferred and common; the number of shares of each; the amount of stock paid up; the par and real value thereof; the highest price at which such stock was sold at a bona fide sale within twelve months next before the fifteenth day of September of the year in which the statement is required to be made; the amount of surplus fund and undivided profits, and the value of all other assets; the total amount of indebtedness as principal, the amount of gross or net earnings or income, including interest on investments, and incomes from all other sources for twelve months next preceding the fifteenth day of September of the year in which the statement is required; the amount and kind of tangible property in this state, and where situated, assessed, or liable to assessment in this state, and the fair cash value thereof, estimated at the price it would bring at a fair voluntary sale, and such other facts as the auditor may require.

"Sec. 4079. Where the line or lines of any such corporation, company or association extend beyond the limits of the state or county, the statement shall, in addition to the other facts hereinbefore required, show the length of the entire lines operated, owned, leased or controlled in this state, and in each county, incorporated city, town or taxing district, and the entire line operated, controlled, leased or owned elsewhere. If the corporation, company or association be organized under the laws of any other state or government, or organized and incorporated in this state, but operating and conducting its business in other states as well as in this state, the statement shall show the following facts, in addition to the facts hereinbefore required: The gross and net income or earnings received in this state and out of this state, on business done in this state, and the entire gross receipts of the corporation, company or association in this state and elsewhere during the twelve months next before the fifteenth day of September of the year in which the assessment is required to be made. In cases where any of the facts above required are impossible to be answered correctly, or will not afford any valuable information in determining the value of the franchises to be taxed, the said board may excuse the officer from answering such questions: provided, that said board, from said statement, and from such other evidence, as it may have, if such corporation, company or association be organized under the laws of this state, shall fix the value of the capital stock of the corporation, company or association, as provided in the next succeeding section, and from the amount thus fixed shall deduct the assessed value of all tangible property assessed in this state, or in the counties where situated. The remainder thus found shall be the value of its corporate franchise subject to taxation as aforesaid.

"Sec. 4080. If the corporation, company or association be organized under the laws of any other state or government, except as provided in the next section, the board shall fix the value of the capital stock as hereinbefore provided, and will determine from the amount of the gross receipts of such corporation, company or association in this state and elsewhere, the proportion which the gross receipts in this state, within twelve months next before the fifteenth day of September of the year in which the assessment was made, bears to the entire gross receipts of the company, the same proportion of the value of the entire capital stock, less the assessed value of the tangible property assessed, or liable to assessment, in this state, shall be the correct value of the corporate franchise of such corporation, company or association for taxation in this state.

"Sec. 4081. If the corporation organized under the laws of this state or of some other state or government be a railroad, telegraph, telephone, express, sleeping, dining, palace or chair-car company, the lines of which extend beyond the limits of this state, the said board will fix the value of the capital stock as hereinbefore provided, and that proportion of the value of the capital stock, which the length of the lines operated, owned, leased or controlled in this

state, bears to the total length of the lines owned, leased or controlled in this state and elsewhere, shall be considered in fixing the value of the corporate franchise of such corporation liable for taxation in this state; and such corporate franchise shall be liable to taxation in each county, incorporated city, town or district through, or into which, such lines pass, or are operated, in the same proportion that the length of the line in such county, city, town or district bears to the whole length of lines in this state, less the value of any tangible property assessed, or liable to assessment, in any such county, city, town or taxing district.

"Sec. 4082. Whenever any person or association of persons not being a corporation nor having a capital stock, shall, in this state, engage in the business of any of the corporations mentioned in the first section of this article, then the capital and property, or the certificates or other evidences of the rights or interests of the holders thereof in the business and property or capital employed therein, shall be deemed and treated as the capital stock of such persons or association of persons for the purposes of taxation and all other purposes under this article, in like manner as if such person or association of persons were a corporation.

"Sec. 4083. It shall be the duty of the auditor, immediately after fixing such values by said board, to notify the corporation of the fact; and all such corporations shall have thirty days from the time of receiving the notice to go before such board and ask a change of the valuation, and may introduce evidence and the chairman of the board is hereby authorized to summon and swear witnesses, and after hearing such evidence the board may change the valuation as it may deem proper, and the action of the board shall be final."

The averments of the bill touching the assessment of 1899 are substantially that the complainant's company filed with the auditor a verified statement as required by sections 4078 and 4079. It is then averred that the board thereupon fixed the valuation of the alleged franchise of the Adams Express Company at $774,300, and that this value was "arrived at by the following computation, as appears by a memorandum thereof made by said board at the time and placed upon its file:

"Market value of company's stock, $12,000,000, at $1.15.
"Total mileage of the company, 31,720 miles, $14,800,000.
"Value of each mile, $435.
"Mileage in Kentucky, 1,780 miles.
"Capital in Kentucky, $774,300."

Notice was thereupon given in accordance with section 4083, set out above. A protest was then filed upon these grounds: First, that the act was void under both the Constitutions of Kentucky and that of the United States; second, because the board had assessed property not in the state; and, third, because they had included assets of the value of $4,021,470 not used "in the company's express business," and none of which was within the state, or subject to its jurisdiction for purposes of taxation.

A detailed statement of the assets, composing an aggregate of $4,021,470, consisting in stocks and bonds, was filed, and with it an insistence that "the assessments for the year should be made on the following basis:

Market value of shares (a 4 per cent. stock).................. $12,000,000
Deduct outside investment no part of express plant.......... 4,021,470

    Value of express plant...................................... $ 7,978,530

"Total mileage in United States, 32,000.
"Value per mile, $249.
"Mileage in Kentucky, 1,780.

Franchise in Kentucky .............................................. $443,220
Less tangible property .............................................. 7,141

    Franchise in Kentucky ...................................... $436,079"

The bill also avers that the board assessed the "alleged franchise" of said company for the subsequent year of 1900 at the sum of $1,481,040, "which sum

said board arrived at by the following computation, as appears by a memo-, randum thereof made by said board at the time and placed on its files:

"Market value of company's stock $12,000,000 at $1.20........ $14,400,000
Bonds .......................................................... 12,000,000

$26,400,000

"Total mileage of company, 31,720.
"Mileage in Kentucky, 1,780..
"Capital in Kentucky, 1,780 of $26,400,000—$1,481,040."

Application for a "change in valuation was made," in which it was insist-ed that the value of the company's capital had been reached by erroneously including bonds and stocks aggregating $4,123,265, not a part of the company's express plant, and by the inclusion of the item of $12,000,000, being bonds and stocks accumulated in former years by the company, and turned over to a trust company in trust for the benefit of its shareholders, to whom had been issued assignable certificates showing their interest. It was also insisted that, deducting these items, the proper valuation would be $440,559.83. Substantially the same valuation and assessment was made for 1901, and the averments of the bill as to the manner in which the valuation had been determined are almost identical with those in respect of the two preceding years. The assessments complained of in favor of the state aggregate more than $18,000 and towns $38,000. In any aspect of the case the amount in dispute exceeds $2,000 of the tax claimed by the state and a like sum claimed as due to counties and towns under apportionment about to be made to them by the auditor when the bill was filed.

While claiming in general terms that the entire assessment was void because of the unconstitutional character of the law under which it was made, the bill averred an offer to pay upon the valuation proposed by the exhibits to the bill and an offer to deposit in court the amount payable under said valuations, but no money was in fact paid in. Subsequently the sums admitted to be due were paid to the State Treasurer, and upon that footing an injunction pendente lite was granted.

The only defendant to the bill is Gus G. Coulter, who is described as the "Auditor of Public Accounts of the Commonwealth of Kentucky." In respect of the defendant, Coulter, it is charged that "the defendant claims that said company is delinquent," and that it is liable to the penalties prescribed by section 4091, Ky. St. 1903, and that "he is threatening to proceed to enforce and collect said tax and penalties, and, unless restrained by the order of this court, the defendant will apportion and certify to the county clerks in more than nineteen counties of the state the proportionate amount of said assessment in accordance with said act, * * * and said company will suffer irreparable injury and will be subjected to a multiplicity of vexatious suits and prosecutions, and to an illegal lien upon its property within the state." The relief specifically prayed is that the defendant be enjoined "from collecting or attempting to collect any of said taxes due to the state of Kentucky," and from "certifying said valuation or assessment" (in excess of the conceded valuation) "to any county clerk of said state." The answer of the defendant, Coulter, among other things, says that before the undisputed tax was paid the defendant "became delinquent, and liable to penalty under the statute," and that suits to recover the taxes due and penalty thereon and penalty for delinquency have been instituted by the commonwealth of Kentucky, through Attorney General, in the circuit court of Franklin county, for the year 1899, which is yet pending and yet undetermined, and in which action the said express company makes the same defense as is herein presented as cause for injunction.

The defendant further answered, and said that he, as Auditor of Kentucky, had "no power of distraint for taxes," and "to collect the taxes here in controversy the only remedy provided for their collection is a demand, and, upon failure to pay, an action to coerce payment, in the name of the state of Kentucky, and over this action this defendant has no control, that matter coming within the duties of the Attorney General," and that in such action the complainant can present all of the objections now made. While admitting that it is his duty under the law to certify to the county clerks the valuation ap-

portioned to any county when the apportionment is made by the board, defendant denied that the taxes for 1899, 1900, and 1901 had been apportioned, and that until their apportionment had been made he had no authority to so certify. The evidence, however, showed that the apportionment had in fact been made by the board when the bill was filed.

In respect to the mode in which the board of assessors had arrived at the valuation complained of the answer says: "Further answering, defendant says that the said state board of valuation and assessment, composed as stated, did, as the law provided, meet and value and assess the property of the said express company, as said board valued and assessed all other property within their jurisdiction, and the manner of such valuation and assessment was as follows, and not otherwise, viz.: It was first ascertained from the report submitted by the officer or agent of the said company the number and par value of the capital stock, then the cash of such stock, estimated by the average value of sale of such stock upon the market, and this total value of the stock of said express company was then apportioned to the state in the ratio of the mileage in this state to the entire mileage of the company, and from this value thus obtained was deducted the value of the tangible property assessed by said company in all the counties of the state, and the remainder was the valuation fixed for said express company's property in this state, which is the sum as alleged in the bill of complaint upon which taxes were computed and demanded as alleged. Further answering, defendant says that the taxes demanded of said express company is not a tax to exist or do business, but is a tax on its property situated in this state, and not elsewhere. It is a tax on its intangible property, apportioned according to its mileage, and is not, as alleged, a tax on stocks, bonds, mortgages, real or personal estate, situated outside of the territorial limits of the state of Kentucky." After denying knowledge of the fact that the complainant had the bonds and the stocks or other property such as claimed, it is then said: "That if it be that said express company owns such stocks, bonds, notes, and mortgages of the kind and value as is alleged in the bills of complaint, and if it also be true that the securities are kept in the city of New York, it is not true that said express company is entitled to have the total value of its capital stock reduced by such sums, or by any sums by reason thereof, when considered for assessment and valuation for taxation in this state, for the reason that such stocks, bonds, notes, mortgages, or other securities are not assessed by the state of Kentucky, nor by the state board of valuation and assessment in the assessment complained of, but the assessment and valuation was of the value of the capital stock of the said express company apportioned as stated; and while it may be true that the assets of the said company is a material thing that fix the value of its capital stock, as were also its rights, contracts, and business conducted, yet these stocks and securities held and owned by the said company were not valued or assessed or considered in the valuation of the said company's property."

The answer further pleads and relies upon the conclusiveness of the action of the board of valuation and assessment, particularly since the question was but one of valuation, in respect to which complainant had had a full hearing. Upon a final hearing before Cochran, District Judge, he held, in a memorandum opinion, that the assessment complained of wrongly included property not within the state of Kentucky, nor subject to its taxing jurisdiction, in that it included certain bonds, stocks, and real estate situated outside of the state, "and not a part of that unit of value covering all of the states of the Union in which complainants do business, a part of which is in the state of Kentucky, and subject to be assessed and taxed therein." In view of the question as to whether this is not a suit against the state of Kentucky, and, if not, whether there can be granted any affirmative relief in respect of the taxes due to the state in the absence of the state, we set out the last paragraph of the final decree in the court below:

"It is therefore ordered, adjudged, and decreed that said Adams Express Company pay the sum of $2,063.10 to the Treasurer of the State of Kentucky within ten days from this date, and that thereupon, or upon the tender of said sum to said treasurer, and his refusal to accept the same, said assessments made by said state board of valuation and assessment for the year 1899 in

excess of said sum of $536,773.60, and for the year 1900 in excess of said sum of $575,199.83, and for the year 1901 in excess of said sum of $623,285.46, be, and the same hereby are, set aside and held for naught, and that the taxes due from said Adams Express Company to the state of Kentucky for the years 1899, 1900, and 1901 be, and the same hereby are, found and declared to have been paid in full, and that the defendant be, and he hereby is, enjoined from collecting any further sum from said company on account of taxes for any of said years, and from apportioning or certifying for local taxation said assessment for the year 1899 in excess of said sum of $536,773.60, and said assessment for the year 1900 in excess of said sum of $575,199.83, and said assessment for the year 1901 in excess of said sum of $623,285.46. It is further considered that the plaintiff recover from the defendant his costs herein to be taxed."

John W. Ray, for appellant.

Lawrence Maxwell, Jr., for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The only defendant is Gus G. Coulter, described as "Auditor of Public Accounts of Kentucky," and the appeal is by Gus G. Coulter, "Auditor of Public Accounts of Kentucky." One of the errors assigned is that "the suit is in reality against the state of Kentucky, and the decree an adjudication of the rights of the state of Kentucky, and affects no personal or property rights of defendant." This objection was primarily made by demurrer, and has been very persistently pressed upon us in brief and argument. If this is in fact a suit against the state, it cannot be maintained against the will of the state. On the other hand, if it is not a suit against the state, what relief can the complainant obtain against the defendant, Coulter? Under section 4077 et seq. of the Kentucky Statutes of 1903 such corporations and companies as are mentioned therein, in addition to a tax upon their tangible property, are required to pay an additional tax to the state and a local tax to counties, towns, etc., upon what the statute calls the "franchises" of the company. The value of this so-called franchise is fixed by a board of state officials, consisting of the Auditor, Treasurer, and Secretary of State, and styled the "Board of Valuation and Assessment." So far as the tax upon this franchise for state purposes is concerned, the functions of this board, as such, are terminated when the valuation has been finally fixed after giving notice, and an opportunity to be heard upon application for "a change in valuation," as provided by section 4083. Under section 4091 the tax thus assessed for state purposes becomes due and payable 30 days after final notice by the auditor. This final notice had been given, and the duties of the board completed, in respect of the several assessments complained of, before this bill was filed. The members of the board of valuation and assessment were therefore not made parties defendant as such, inasmuch as it was not possible to enjoin them from doing that which had already been done. Fishback v. W. U. Tel. Co., 161 U. S. 96, 101, 16 Sup. Ct. 506, 40 L. Ed. 630. But it is sought to challenge the validity of the assessment so made as a whole by a suit to which the auditor is alone a party. What other duty does the statute impose upon the auditor? In respect to the local taxation of this so-called

franchise something more did remain to be done by the auditor, for section 4084 makes it his duty at the expiration of 30 days after the final determination of the value of such franchise to certify to the county clerk of the counties, when any portion of the corporate franchise of any such corporation, company, or association shall be liable to local taxation as herein provided, the amount thereof liable for county, city, town, or district tax. But this act which the defendant was required to do as precedent to the proper assessment of this franchise by the counties, cities, and towns within which it was exercised, and which it was one object of this bill to restrain him from doing, in no wise concerns or affects the completed assessment of the state tax upon the franchise. The assessment for local purposes was incomplete when the bill was filed, and the defendant was about to do an act in furtherance of the local assessment, which, the complainants say will, if unrestrained, impose upon them an illegal burden and an irreparable injury, and subject them to a multiplicity of suits in order to resist the consequences of the imposition of local taxes in many counties, cities, and towns upon the basis of the illegal and void assessment made by the said state board. But in respect of the tax due the state nothing remained for this defendant to do. The assessment for state purposes was complete. The relief sought by the bill is of twofold character: First, it is sought to enjoin the enforcement of the tax so already assessed for state purposes; second, it is sought to restrain the certification by the defendant of the valuations apportioned by the board to the several counties, cities, and towns wherein this franchise is exercised for assessment for local purposes. Does jurisdiction exist for either purpose? If the state itself can be brought into court and compelled to defend the assessment, the trouble in the way of granting relief as to the completed state assessment is out of the way. But the eleventh amendment provides that the judicial power of the United States shall not be construed to extend to any suit in law or equity against one of the United States by citizens of another state.

Justice Matthews, speaking for the court, in In re Ayers, 123 U. S. 443, 505, 8 Sup. Ct. 164, 31 L. Ed. 216, in respect of this amendment, said:

"To secure the manifest purposes of the constitutional exemption guarantied by the eleventh amendment requires that it should be interpreted not literally, and too narrowly, but fairly, and with such breadth and largeness as effectually to accomplish the substance of its purpose. In this spirit it must be held to cover not only suits brought against a state by name, but those also against its officers, agents, and representatives, where the state, though not named as such, is nevertheless the only real party, against which alone in fact the relief is asked, and against which the judgment or decree effectively operates. But this is not intended in any way to impinge upon the principle which justifies suits against individual defendants, who, under color of the authority of unconstitutional legislation by the state, are guilty of personal trespasses and wrongs, not to forbid suits against officers in their official capacity either to arrest or direct their official action by injunction or mandamus, where such suits are authorized by law, and the act to be done or omitted is purely ministerial, in the performance or omission of which the plaintiff has a legal interest."

The question, then, is whether this is not in reality a suit against the commonwealth of Kentucky, although the state is not nominally

a party on the record. But it is said that suits to enjoin state officers from doing acts under color of an unconstitutional law or an illegal assessment under a valid law are not suits against the state, and have been frequently maintained; and counsel cite Taylor et al. v. L. & N. R. R. Co., 31 C. C. A. 537, 88 Fed. 350; Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204; Farmers' Bank v. Stone, Auditor, 174 U. S. 409, 19 Sup. Ct. 880, 43 L. Ed. 1027; Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 29 L. Ed. 185; Reagan v. Trust Co., 154 U. S. 362, 390, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Smyth v. Ames, 169 U. S. 518, 18 Sup. Ct. 418, 42 L. Ed. 819; Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, 41 L. Ed. 648; Allen v. B. & O. Rd., 114 U. S. 311, 5 Sup. Ct. 925, 29 L. Ed. 200; United States v. Lee, 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171. But the ground upon which all such cases rest is that the officers sued were illegally about to do some act or take some step, under color of a law of the state, in violation of the rights of the complainant, and for which the defendants would be personally liable. In re Ayers, 123 U. S. 493, 501, 8 Sup. Ct. 164, 31 L. Ed. 216; Fitts v. McGhee, 172 U. S. 516, 529, 19 Sup. Ct. 269, 43 L. Ed. 535.

In Fitts v. McGhee, cited above, the rule for jurisdiction in such cases is admirably stated by Justice Harlan, who, after referring to cases cited as authorizing suits against state officials, said:

"Upon examination it will be found that the defendants in each of those cases were officers of the state, specially charged with the execution of a state enactment alleged to be unconstitutional, but under the authority of which it was averred they were committing, or were about to commit, some specific wrong or trespass to the injury of the plaintiff's rights. There is a wide difference between a suit against individuals holding official positions under a state, to prevent them, under the sanction of an unconstitutional statute, from committing by some positive act a wrong or trespass, and a suit against officers of a state merely to test the constitutionality of a state statute, in the enforcement of which those officers will act only by formal judicial proceedings in the courts of the state. In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute by an injunction suit brought against them, then the constitutionality of every act passed by the Legislature could be tested by a suit against the Governor and the Attorney General, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all of its laws, and the latter, as Attorney General, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons. If their officers commit acts of trespass or wrong to the citizen, they may be individually proceeded against for such trespasses or wrong."

In Taylor v. L. & N. R. Co., cited above, it was sought to enjoin state officers from certifying a tax under color of a state law claimed to be void. Speaking for this court, Judge Taft said:

"This is not a suit against the state. It is a suit against individuals, seeking to enjoin them from doing certain acts which they assert to be by authority of the state, but which the complainants aver to be without lawful authority."

So, in Stone, Auditor, v. Farmers' Bank, 174 U. S. 409, 19 Sup. Ct. 880, 43 L. Ed. 1027, the object of the suit was to restrain the Kentucky state board of valuations and assessment from valuing and assessing the franchise of the complainant bank, and from certifying assessments made down to the county court clerks.

Tested by the principle thus stated, this suit is clearly maintainable so far as it seeks to enjoin the defendant from certifying the assessments complained of to the county court clerks. The suit to that extent is a suit against Coulter as an individual, and the object is to restrain him from certifying the assessments made by the state board, which he claims he is required to do by the law of the state, but which the complainants say is not a valid authority. Coulter must therefore justify himself by showing, if he can, that the authority under which he claims to act was sufficient. But in respect to the tax due the state the auditor has no other act to do under the statute and has no authority to enforce the collection of that tax. The tax so due is payable "into the, treasury" by the express terms of section 4086. The bill does charge that the defendant "is threatening to proceed to enforce and collect said tax and penalties," and the prayer of the bill is that the defendant be commanded "to refrain from collecting or attempting any of said tax alleged to be due the state of Kentucky." As we have elsewhere stated, the defendant denies that he had any power to distrain for the tax so due the state, and avers that the law of Kentucky contains no provision for the enforcement of the franchise tax so assessed in behalf of the state except by a suit brought in a court having jurisdiction in the name of the state and by the state's Attorney General. Counsel representing the appellee have not pointed out any provision of law under which the defendant, as auditor, had any power or authority to coerce the payment of the tax so assessed, and we have searched in vain for any remedy against a recalcitrant taxpayer of such a franchise tax, so far as same is due the state, other than those found in sections 4091 and 113, Ky. St. 1903. By section 113 it is made the duty of the Attorney General "to institute proper procedure to coerce payment of all demands of the commonwealth, payable at the treasury; not discharged in proper time." And by section 4091 it is provided that any tax assessed upon the franchise of any of the companies mentioned in the article, not paid, after 30 days' notice, shall be deemed delinquent, and that a penalty of 10 per cent. shall attach; and that the delinquent taxpayer "failing to pay its taxes, penalty, and interest, after becoming delinquent, shall be deemed guilty of a misdemeanor, and, on conviction, shall be fined fifty dollars for each day the same remains unpaid to be recovered by indictment or civil action, of which the Franklin circuit court shall have jurisdiction." This remedy by suit appears to have been in fact resorted to in respect to some of the tax here involved, for the defendant testifies that actions have been brought to enforce same in the Franklin circuit court.

To enjoin the defendant from collecting or attempting to enforce the payment of this tax would be manifestly fruitless, unless the decree is to affect and conclude the state. The decree appealed from did not stop with an order commanding the defendant to take no other

or further step under the law, because he had under the law no other or further duty in connection with the matter, but adjudicated the amount due under a legal assessment, and undertook to annul the assessment in excess of that sum. The court in this exceeded its jurisdiction, for jurisdiction over the defendant did not give it jurisdiction over the state of Kentucky, as the decree seems to assume. If the defendant had been about to take some step under color of the law tending to complete the assessment, or if he had been authorized to seize property and was about to do so, then he was, assuming the case to be with the complainants on the merits, about to commit a trespass for which he would be individually liable, and in a proper case equity might enjoin his proposed action upon the ground of his want of legal authority. But this is not the case made in respect to the tax due the state, and the bill, so far as it sought relief against the state tax, must be dismissed without regard to the merits. So far, however, as the bill seeks to restrain the defendant from certifying an alleged illegal valuation and assessment to the clerks of the several counties as a basis for further local taxation, the suit is not one against the state, but against the defendant as an individual. Whether it is to be sustained in that aspect will depend upon the merits.

2. So far as the bill attacks the constitutionality of the law under which the board of valuation and assessment professed to proceed, either because the law is repugnant to the commerce clause of the fourteenth amendment to the Constitution of the United States or to the provisions of the Constitution of Kentucky, it is not well filed, inasmuch as all of these questions were decided in favor of the validity of the law in Adams Express Company v. Kentucky, 166 U. S. 171, 17 Sup. Ct. 527, 41 L. Ed. 960. In that case the statute was held as not imposing a tax upon the technical franchise of the companies included therein, but upon the intangible property of such companies as a unit. "The legislative intention," said the court, "is that the entire property, tangible and intangible, of all foreign and domestic corporations, and all foreign and domestic companies possessing no franchise, should be valued as an entirety, the value of the tangible property be deducted, and the value of the intangible property thus ascertained be taxed under these provisions; and, as to railroad, telegraph, telephone, express, sleeping car, etc., companies, whose lines extend beyond the limits of the state, that their intangible property should be assessed on the basis of the mileage of their lines within and without the state. But from the valuation on the mileage basis the value of all intangible property is deducted before the taxation is applied." That the act does not contemplate that this additional tax shall be imposed upon property, either within or without the state, which is otherwise taxable as tangible property, is plain. The additional tax is therefore a tax upon the intangible property of the companies within the act. The scheme is the same in respect of both domestic and foreign corporations and companies. If the lines of any such corporation or company extend beyond the limits of the state, the taxation is in the proportion which the mileage in the state bears to the total mileage of the company. If the lines were wholly within the state, the plain direction is that the value of any tangible property within the state

is to be deducted as being subject to a different mode of taxation. This Kentucky act, like the Ohio act construed in Adams Express Co. v. Ohio and Sanford v. Poe, cited below, proceeds upon the general principle 'that it is competent as to such companies, having lines extending through more than one state, to value their property "as a unit for purposes of taxation, taking into consideration the uses to which it was put, and all the elements making up the aggregate value, and that a proportion of the whole fairly and properly ascertained might be taxed by the particular state without violating any federal restriction." Adams Express Co. v. Ohio, 165 U. S. 194, 220, 17 Sup. Ct. 305, 41 L. Ed. 683; Western Union Tel. Co. v. Mass., 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790; Pullman Palace Car Co. v. Penn., 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613; Sanford v. Poe, 69 Fed. 546, 16 C. C. A. 305, 60 L. R. A. 641. Sections 4078, 4079, and 4080 make it the duty of the companies mentioned in the law to furnish certain data by which the value of the intangible property of such companies may be ascertained, and prescribe the manner in which the board is to proceed in the valuation. When the value of the "capital stock" is ascertained—meaning thereby every element contributing to value, whether tangible or intangible—the direction of the act is that from this shall be taken or deducted the value of all tangible property otherwise taxable. This method is as applicable to companies and corporations organized under the laws of other states as it is to those existing under the laws of Kentucky. Neither is the injunction in reference to a deduction of the value of tangible taxable property from the gross value of the whole corporate property limited to such as is situated within the state of Kentucky. If tangible property having a situs outside the state be included in the valuation of the company's intangible property, the purpose of the law, being to tax only intangible property, is defeated. We therefore read the act, as the Supreme Court seems to have read it in Adams Express Company v. Kentucky, as requiring the deduction of tangible property from the gross value of all corporate assets, whether such tangible property be within or without the state.

3. We come now to the specific objections urged to the assessments for 1899, 1900, and 1901, confining ourselves for the present to that of 1899. In respect of this the bill charges that the board fixed the valuation of the company's alleged franchises in the state of Kentucky at $774,300, and that this value was arrived at by taking the gross market value of the company shares and the total mileage of the company, and from these factors fixing the value of the company's "franchise" in Kentucky as determined by the proportion which the mileage of the company's lines in Kentucky bore to the total mileage in the United States. The contention is that, if the board followed the law in thus valuing for assessment the company's intangible property assessable in Kentucky, the law is invalid, and that, if they did not obey the law in the method pursued, the law must furnish a remedy to correct so prejudicial an error. The question thus presented is not a mere question of excessive valuation. The determination of mere questions of value depending upon fact is one for the final determination of the special tribunal to which it was submitted, and, in the ab-

sence of fraud, its conclusion may not be assailed by evidence tending to show a less value. Pittsburg, etc., Ry. Co. v. Backus, 154 U. S. 434, 14 Sup. Ct. 1114, 38 L. Ed. 1031; Western Union Tel. Co. v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49; Adams Express Co. v. Ohio, 165 U. S. 196, 229, 17 Sup. Ct. 305, 41 L. Ed. 683. No charge of fraud is made by the bill. The only question, therefore, is whether the law has been substantially pursued by the method of appraisement adopted. We are not left to conflicting evidence of the method pursued in arriving at the valuation of the complainant's so-called franchise in Kentucky. The answer, in legal effect, is a concession of the averments of the bill as to the mode of arriving at the value of the complainants' so-called franchise. In the foregoing part of this opinion we have set out a paragraph of the answer in respect to the mode of arriving at the value of the assessable franchise in Kentucky. This method of ascertaining the value of the intangible property of this corporation called in the act "its franchise" was grossly erroneous. No deduction was made for the tangible property of the company, save that assessed as such in Kentucky. The total value resulting was the value of the company's assets of every kind, tangible and intangible, wherever situated. Unlike the Ohio law construed in Sanford v. Poe and Adams Express Co. v. Ohio, cited above, the Kentucky act now under consideration only contemplated a special assessment upon the intangible property called its "franchise," of the corporations named in the act; the tangible property situated within the state being otherwise taxed. The mode of appraisement followed was also erroneous, in that a valuation of the company's intangible property, legally taxable in Kentucky, arrived at by treating the market value of the company's shares as equal to the value of the company's distributable intangible property ignored the existence, outside the state of Kentucky, of intangible property which constituted no part of the general plant or franchise, a part of which was situated in Kentucky, and taxable there. The company claimed, and offered evidence to show, that the market value of its shares was in part made up by the inclusion of certain railroad bonds and bank and railroad shares owned by the company, and actually held in the city of New York, where its chief office was, which constituted a special "outside investment" of surplus earnings, in no way used in or constituting a part of its general express business; and contended that this investment, aggregating something over four millions, should be deducted from any valuation of its intangible property before distributing the general valuation upon the mileage system. To say, as the answer does, that these stocks and bonds so held were not estimated or taken into account in arriving at the distributable value of the company's capital stock, is contradicted by the admitted fact that that value was arbitrarily fixed as equal to the market value of its shares, which indubitably included these bonds and stocks as one element making up that market value. The law of Kentucky does not require, in estimating the value of the intangible property of companies whose lines extend beyond the state, that that value shall be taken as always equal to the market value of its shares and bonded debt, after deducting actual tangible property, and the result so obtained arbitrarily apportioned upon a

mileage basis. Section 4081 only requires that the ratio of mileage. value obtained by a consideration of all the data which the companies are required to furnish "shall be considered in fixing the value of the corporate franchise of such corporation liable for taxation in this state." It was the plain duty of the board, upon a showing being made, to eliminate from the gross value of the company's franchise or intangible property such part of that gross value as was produced by special investments having a situs outside the state, which were not used in the conduct of the company's business, and were not a part of· the general business unit, a part of which was taxable by the· state of Kentucky. This was the construction placed upon the Ohio law, which was not limited to a taxation of intangible values only. State v. Jones, 51 Ohio St. 492, 37 N. E. 945; Sanford v. Poe, 69 Fed. 546, 555, 16 C. C. A. 305, 60 L. R. A. 641.

In Sanford v. Poe, reported under the style of Adams Express Co. v. Ohio, 165 U. S. 195, 227, 17 Sup. Ct. 305, 41 L. Ed. 683, the court said :

· "Presumptively, all the property of the corporation or company is held and used for the purposes of its business, and the value of its capital stock and bonds is the value of only that property so held and used. Special circumstances might exist, as indicated in Pittsburg, Cincinnati, etc., Railway Co. v. Backus, 154 U. S. 421, 443, 14 Sup. Ct. 1114, 38 L. Ed. 1031, which would require the value of a portion of the property of an express company to be deducted from the value of its plant as expressed by the sum total of its stock and bonds before any valuation by mileage could be properly arrived at; but the difficulty in the cases at bar is that there is no showing of any such separate and distinct property which should be deducted, and its existence is not to· be assumed. It is for the companies to present any special circumstances which may exist, and, failing in their doing so, the presumption is that all their property is directly devoted to their business, which, being so, a fair distribution of its aggregate value would be upon the mileage basis."

And in the same case on a rehearing (166 U. S. 185, 222, 17 Sup. Ct. 604, 41 L. Ed. 965) Justice Brewer said :

"It is suggested that the company may have bonds, stocks, or other investments which produce a part of the value of its capital stock, and which have a special situs in other states, or are exempt from taxation. If it has, let it show the fact. Courts deal with things as they are, and do not determine rights upon mere possibilities. If half of the property of the Adams Express Company, which, by its own showing, is worth $16,000,000 and over, is invested in United States bonds, and therefore exempt from taxation, or invested in any way outside the business of the company, and so as to be subject to purely local taxation, let that fact be disclosed; and then, if the state of Ohio attempts to include within its taxing power such exempted property, or property of a different situs, it will be time enough to consider and determine the rights of the company. That, if such facts exist, they must be taken into consideration by a state in its proceedings under such tax laws as are here presented, has been heretofore recognized and distinctly affirmed by this court. Pittsburg, Cincinnati, etc., Railway Co. v. Backus, 154 U. S. 421, 443, 14 Sup. Ct. 1114, 38 L. Ed. 1031; Western Union Telegraph Co. v. Taggart, 163 U. S. 1, 23, 16 Sup. Ct. 1054, 41 L. Ed. 49; Adams Express Co. v. Ohio, 165 U. S. 194, 227, 17 Sup. Ct. 305, 41 L. Ed. 683. Presumably all that a corporation has is used in the transaction of its business, and if it has accumulated assets which for any reason affect the question of taxation, it should disclose them. It is called upon to make return of its property, and if its return admits that it is possessed of property of a certain value, and does not disclose anything to show that·any portion thereof is not subject to taxation,· it cannot complain if the state treats its property as all taxable."    ... .. .·

In ignoring the evidence offered and in refusing to deduct the special investments so having a special situs in New York, the board misconstrued the law and exceeded their authority.

The same error crept into the assessment of 1900 and 1901, for the same bonds and stocks were again included in the gross value of the company's properties. But in the year last mentioned the board enlarged the gross value of the company's alleged franchises by adding to the market value of its shares the market value of certain bonds which had been issued by the company, upon the theory that the market value of the capital stock was shown by the aggregate market value of its shares and bonds. Thus the taxable value of the tangible property, called its "franchises," within the state of Kentucky, was fixed at $1,481,040.00. This was arrived at by a computation which has been elsewhere set out. If these bonds are, indeed, obligations diminishing the value of the shares because payable, in preference to the rights of shareholders, out of the general assets of the company, they do constitute a factor in ascertaining the value of the company's entire capital stock. The bill, in respect to these bonds, avers:

"On February 9, 1898, said company, in addition to the property used by it in carrying on its express business, had accumulated and held and owned bonds and stocks in various companies to the amount and value of more than $12,000,000, none of which were used by the company in carrying on its express business, and none of which constituted any part of its so-called express plant or equipment, and none of which were in the state of Kentucky, or subject to the taxing jurisdiction of that state. On said February 9, 1898, said company transferred, sold, assigned, conveyed, and delivered said stocks and bonds to the Mercantile Trust Company of New York by an instrument in writing, a copy of which is hereto attached and made part hereof, marked 'Exhibit D,' and issued to its shareholders as the distributive share or dividend of such shareholders, representing their respective interests in said surplus assets of the company, the bonds of the company mentioned and described in said Exhibit D to the amount of $100 par value for each share of the company. The bonds to the amount of $12,000,000, included by said state board in said valuation of said company's capital in Kentucky, are the $12,000,000 of bonds so issued under said Exhibit D, and said Exhibit D is the deed of trust mentioned in said application to the state board to reduce said assessment. A copy thereof was exhibited to said state board."

The evidence shows that, instead of distributing these bonds and shares as a dividend, the company transferred them to a trust company, and issued bonds against them, and distributed these bonds as a dividend to its members. The bonds themselves are payable only out of the securities so deposited. The bonds and stocks thus conveyed to a trust company constituted an investment of surplus earnings which were not used in carrying on the express business of the company, and, as an outside investment, had a special situs in New York, where they were actually held. Not being a part of the distributable unit of taxation, and the bonds issued against them not being general obligations of the company, neither the bonds nor the securities upon which they were issued should be estimated in the valuation of the company's intangible property. That the express company, as such, retains, under the terms of the conveyance, certain valuable property rights in the securities upon which these bonds were issued, by which, in certain contingencies, creditors may reach and subject them, is of no moment. That interest constitutes in itself an outside investment, and is not

properly to be regarded in estimating the company's intangible assets taxable in Kentucky. The only deductions which the express company claimed from the valuations fixed by the assessors were allowed by the circuit court, being the matters considered in the foregoing part of this opinion.

The bill, so far as it sought relief against the taxes assessed in behalf of the commonwealth, must be dismissed.

The decree, so far as it adjudicated the amount of taxes due the state, must be reversed.

The decree restraining the defendant from certifying any assessment beyond the valuation obtained by the deductions indicated was right, and is to that extent affirmed.

Relief is denied as to the taxes claimed by the state only because that assessment was completed before the bill was filed, and a decree affecting the completed work of the board of valuation and assessment would be a decree in effect against the state, which cannot be sued without its consent.

The costs of appeal will be divided.