ILLINOIS CENTRAL RAILROAD COMPANY *v.* GREENE, AUDITOR, ET AL., CONSTITUTING THE BOARD OF VALUATION AND ASSESSMENT FOR THE STATE OF KENTUCKY, ET AL.

GREENE, AUDITOR, ET AL., CONSTITUTING THE BOARD OF VALUATION AND ASSESSMENT FOR THE STATE OF KENTUCKY, ET AL. *v.* ILLINOIS CENTRAL RAILROAD COMPANY.

ILLINOIS CENTRAL RAILROAD COMPANY *v.* GREENE, AUDITOR, ET AL., CONSTITUTING THE BOARD OF VALUATION AND ASSESSMENT FOR THE STATE OF KENTUCKY, ET AL.

GREENE, AUDITOR, ET AL., CONSTITUTING THE BOARD OF VALUATION AND ASSESS-MENT FOR THE STATE OF KENTUCKY, ET AL. *v.* ILLINOIS CENTRAL RAILROAD COMPANY.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF KENTUCKY.

Nos. 642, 643, 644, 645.   Argued January 16, 17, 18, 1917.—Decided June 11, 1917.

*Greene* v. *Louisville & Interurban R. R. Co.*, ante, 499, followed in holding: (1) That these are not in effect suits against the State, (2) that plaintiff has not an adequate remedy at law under § 162, Ky. Stats., and (3) that judicial relief may be granted against unlawful discrimination resulting from general and systematic undervaluations by assessors.

*Louisville & Nashville R. R. Co.* v. *Greene, ante,* 522, followed: (1) As to the sufficiency of proof of general, systematic and notorious undervaluation of property by assessors in Kentucky, (2) in holding that the jurisdiction of the courts extends to enjoining the collection of illegal taxes when assessed for state purposes as well as when assessed for local purposes, and (3) in holding that, as applied to an

interstate railroad, the Kentucky statutes require first an apportionment of a proper share of the railroad's total "capital stock" (tangible and intangible property) value to Kentucky, followed by a deduction from Kentucky's portion thereof of the value of the railroad's tangible property in that State.

The evidence here warrants the conclusion that plaintiff's "franchise" (intangible property) in Kentucky was valued by the Board of Valuation and Assessment upon the basis of 80 per cent. of its "capital stock" (tangible and intangible property) apportioned to that State.

In the absence of fraud, the valuations made by an assessing board are not judicially reëxaminable unless resulting from some principle of assessment which is fundamentally wrong.

In this case no fundamentally wrong principle was involved in adopting the capitalization-of-income rather than the stock-and-bond plan for valuing a railroad system; in determining what rate of interest should be selected, or how many years' earnings should be considered, in capitalizing; or in finding what was the net income for a given year.

Although the fact that property is part of a system and has its uses only in connection with other parts of the system may be considered by a State in taxing that portion of the system which is within her borders, yet the idea of organic unity must not be made the means of unlawfully taxing property without the State belonging to persons domiciled elsewhere.

It being contended that in valuing upon a mileage basis that portion of plaintiff's railroad system which was taxable in Kentucky the Board of Valuation and Assessment did not make due allowance for the excess value per mile due to costly terminals in other States, *Held* that, in the absence of contrary proof, the Board must be presumed to have made such allowance.

Plaintiff insisted that certain investment securities held by it in its treasury in another State should not be considered as part of its assets in assessing its intangible property, apportionable to Kentucky, averring in its pleading that they had no connection with its business of transportation and did not represent railroads or other properties operated by it. This contention being rejected for want of evidence upon the character of the securities and their relations to plaintiff's system, plaintiff on rehearing contended that, as they represented a controlling interest in other railroads outside the State, the mileage of such railroads should be taken into account, under Ky. Stats., § 4081, in the apportionment, *Held* that the District Court did not abuse its discretion in ruling that this contention came too late.

209 Fed. Rep. 465, affirmed.

THE cases are stated in the opinion.

*Mr. Blewett Lee* and *Mr. Edmund F. Trabue*, with whom *Mr. Robert V. Fletcher*, *Mr. John C. Doolan* and *Mr. Attilla Cox, Jr.*, were on the briefs, for the Illinois Central Railroad Co.

*Mr. Charles Carroll*, *Mr. Marvel M. Logan*, Attorney General of the State of Kentucky, and *Mr. John L. Rich*, with whom *Mr. Charles H. Morris*, Assistant Attorney General of the State of Kentucky, was on the briefs for Greene *et al.*

· MR. JUSTICE PITNEY delivered the opinion of the court.·

These are appeals and cross-appeals from two final decrees of the District Court enjoining (upon certain conditions) the enforcement of franchise tax assessments for the respective years 1912 and 1913, made against the Illinois Central Railroad Company (plaintiff below in each case) by Henry M. Bosworth and others, constituting the Board of Valuation and Assessment of the State of Kentucky, who were among the original defendants, and to whose offices the cross-appellants Robert L. Greene and others succeeded pending the suits, and were thereupon brought in as parties defendant. Plaintiff being an Illinois corporation, the federal jurisdiction was invoked upon the ground of diversity of citizenship, and also of alleged infringement of plaintiff's rights under the due process and equal protection provisions of the Fourteenth Amendment; the assessments being attacked as having been made by the Board in a manner not in accordance with the state law, as including in the valuation property not within the State, contrary to the due process clause, and as being based upon a discriminatory rule of valuation as compared with other property in the State, and thus

amounting to a denial of the equal protection of the laws.
The equity jurisdiction was invoked upon the usual
grounds. The pleadings are involved, and no attempt
will be made to summarize them. In the case relating
to the 1912 assessment, they differ somewhat from those
in the case relating to the assessment for the following
year; but the two cases were consolidated for the purposes
of final hearing. They resulted in decrees granting relief
to the plaintiff to the extent of equalization with the basis
of assessment customarily adopted by assessing officers
with respect to other property in the State, and denying
relief upon the other grounds of complaint. Plaintiff
appealed to this court in both cases upon the ground that
it was entitled to more ample relief; defendants took cross-
appeals upon the ground that no relief ought to have been
granted.

The cases were heard here together with several cognate
cases, this day decided, viz: Nos. 617 and 618, *Greene* v.
*Louisville & Interurban R. R. Co., ante,* 499, and Nos. 778
and 779, *Louisville & Nashville R. R. Co.* v. *Greene,
ante,* 522.

The salient facts of the present cases are as follows:
During the two years pertinent to the controversy, plain-
tiff operated a system of railroads extending throughout
the State of Kentucky and ten other States, having,
according to the averments contained in the bills of com-
plaint and the proofs upon which the cases were heard,
a total mileage owned, operated, leased, or controlled
amounting to 4,550.54, of which 563.79 miles, or 12.3 per
cent., were in Kentucky. For the year 1912, the Board of
Valuation and Assessment fixed plaintiff's capital stock
valuation for the State of Kentucky at $27,124,240, and
deducted from this the tangible property assessment made
by the Railroad Commission, $12,377,383, leaving the
franchise assessment $14,746,857. The District Court
granted a restraining order, followed by a preliminary

injunction, conditioned that plaintiff should pay taxes, state and local, on a valuation of $6,618,585 (209 Fed. Rep. 465), and eventually made a final decree enjoining the enforcement of the assessment, conditioned upon plaintiff's paying taxes upon an additional valuation of $1,347,212, or $7,965,797 in all.

For the year 1913, the capital stock value fixed for Kentucky was $23,679,180, the assessed value of tangible property $12,478,903, which, being deducted, left $11,200,277 as the franchise valuation. The court granted a restraining order upon payment of taxes on an assessment of $6,000,000, followed this with a temporary injunction upon the same terms, and made a final decree granting a permanent injunction upon condition of the payment of taxes upon $2,161,067 in addition to the $6,000,000 upon which taxes had been paid under the order for preliminary injunction.

With respect to three of the questions raised by defendants herein: (a) That the suits are not maintainable because in effect suits against the State; (b) that plaintiff has an adequate remedy at law under § 162, Kentucky Statutes; and (c) that plaintiff is not entitled to relief by way of equalization because of the undervaluation of property in general by the local assessors; these cases, like the *Louisville & Nashville Cases*, are controlled by the decision in *Greene* v. *Louisville & Interurban R. R. Co.*, *ante*, 499. Upon the question of the sufficiency of the proofs to warrant the conclusion of the District Court as to the general, systematic, and notorious undervaluation of property in Kentucky by the assessing officers for purposes of taxation, and as to the ratio of such undervaluation, the present cases are indistinguishable from the *Louisville & Nashville Cases*, *ante*, 522, and are controlled by our decision therein. Upon the point that the jurisdiction of the court extends to enjoining the collection of illegal taxes, whether assessed for state or for local pur-

poses, the present cases are controlled by the decision in the *Louisville & Nashville Cases*.

This disposes of all assignments of error filed by the cross-appellants (defendants below).

In these cases, as in those last mentioned, it is earnestly insisted by plaintiff that the District Court erred in holding that the Kentucky statutes, properly construed, require first an apportionment of a proper share of the total "capital stock" value to Kentucky followed by a deduction from Kentucky's proportion thereof of the value of its tangible property in the State, instead of holding that the total tangible property in and out of Kentucky should first be deducted from the total capital stock value before apportionment to the State. We need only repeat what was said in the *Louisville & Nashville Cases*, that this is a question of state law that has been definitely passed upon by the Kentucky Court of Appeals in *Commonwealth* v. *Covington & Cincinnati Bridge Co.*, 114 Kentucky, 343, whose decision the District Court properly followed.

We come to questions peculiar to the present cases.

For the year 1912 the Board of Valuation and Assessment made a preliminary assessment of the franchise at $21,500,000, of which notice was given to plaintiff, and, after a hearing, finally assessed the franchise at $14,746,857; a result reached, as already stated, by taking Kentucky "capital stock" at $27,124,240, and deducting the tangible property assessment of $12,377,383. In granting the preliminary injunction (209 Fed. Rep. 465), the court, deeming that the Board had found the fair cash value of the portion of plaintiff's capital stock in the State to be $27,124,240, equalized this with the undervaluation of other property in the State on a basis of 70 per cent. in order to arrive at a proper valuation of the franchise for the purposes of a temporary injunction. Upon the final hearing, the court reached the conclusion that the valuation of $27,124,240 was itself the result of an equaliza-

tion by the Board at 80 per cent. of what they had found to be the fair cash value of the capital stock in Kentucky; that is to say, that they had found the fair cash value to be $33,905,300. Having concluded that equalization should be made upon the basis of 60 per cent., the court applied this percentage to the $33,905,300, making the equalized capital stock value $20,343,180, deducting from which the assessed value of the tangibles $12,377,383, left $7,965,797 as the value of the franchise. Plaintiff contends that there was no sufficient evidence to support the conclusion that the Board's valuation of $27,124,240 was the result of an 80 per cent. equalization; but the contention is clearly unfounded.

There is a similar contention, equally unfounded, with respect to the mode in which the District Court applied the 60 per cent. equalization factor to the 1913 valuation.

As to the mode in which the Board arrived at a capital stock valuation for the entire system, and the mode in which the Kentucky apportionment was arrived at, several contentions are made by plaintiff besides the one of which we already have disposed. They are: (a) That when the Board capitalized earnings as an index to value they took 6 per cent. as a basis instead of $7\frac{1}{2}$ or 8 per cent., either of which is said to be a more proper rate upon the ground that because of annual unproductive items of expense, amounting to nearly or quite 2 per cent. of plaintiff's capitalization, the higher rate is necessary in order to yield a net 6 per cent. return upon the investment; (b) that when the stock-and-bond method was employed as an index to value the highest instead of the average market prices were employed; (c) that in capitalizing earnings gross income was used, although it included income from investments in the company's treasury, instead of net operating income, which it is insisted is the proper factor; (d) that plaintiff in each year had in its

treasury, at its principal office without the State, large amounts of investment securities that improperly were included in the sum found as the value of its aggregate capital stock and apportioned in part to Kentucky; and (e) that plaintiff owned large and costly terminals at Chicago, New Orleans, Memphis, and elsewhere outside of Kentucky, causing a great excess value mile for mile of plaintiff's lines outside the State as compared with those inside, and that this excess value was not eliminated either before or after the apportionment to Kentucky.

The first three points relate to valuation, the last two to apportionment. The District Court properly held that the action of the Board must be sustained unless it was made to appear that they had adopted a fundamentally wrong principle, or had been guilty of fraud. It held further, that no fundamentally wrong principle was involved in determining whether such a railroad system should be valued on the capitalization-of-income or on the stock-and-bond plan; or, if the former, what rate of interest should be used in capitalizing, or how many years' earnings should be considered, or what was in fact the amount of net income for a given year; or, if the stock-and-bond plan was adopted, what was the value of the stock and bonds; and that on these and similar matters the action of the Board, in the absence of fraud, was binding upon the court. In this we concur.

The claim for an allowance by reason of the treasury securities and the terminals situate in other States is based upon the principle laid down in *Fargo* v. *Hart*, 193 U. S. 490, 499, and similar cases, to which we adhere, that a State cannot tax property outside of its jurisdiction belonging to persons domiciled elsewhere, and that although the fact that property is part of a system and has its actual uses only in connection with other parts of the system may be considered by the State in taxing that portion of the system which is within its borders, yet the notion of

organic unity must not be made the means of unlawfully taxing property without the State.

As to the terminals, the District Court held that since it did not appear but that the Board made due allowance on account of them, it must be presumed that they did make such an allowance.  As to the treasury securities, the court held that plaintiff had not made an adequate showing to the Board of Valuation and Assessment; that it did not appear but that the Board had given proper consideration to them; and that plaintiff had not put the court in possession of the evidence upon which to determine whether the securities were a part of its "unit," or why the securities were held by plaintiff instead of being distributed to the stockholders, and that the case of *Coulier* v. *Weir*, 127 Fed. Rep. 897, 909–911, did not apply because there the property in question had been placed in the hands of trustees for the benefit of stockholders. Upon petitions for rehearing, plaintiff insisted that if the treasury securities were to be taken as a part of the unit, then, since these securities represented a controlling interest in certain large lines of railroad lying outside of Kentucky (the Central of Georgia, the Yazoo & Mississippi Valley, and the Indianapolis Southern systems), the apportionment should take the mileage of these controlled lines into account, which would have yielded a total mileage of all lines amounting to 7,862.95, and Kentucky mileage 560.49, or only 7.13 per cent. for the year upon which the 1912 assessment was based, and a somewhat smaller percentage for the following year.  To this the court responded that the contention came too late, and it cannot be said that this was an unreasonable view, or showed an abuse of discretion.  In addition to the averments respecting comparative mileage contained in the original bills, it was distinctly stated in an amended bill in the case pertaining to the 1912 assessment that the treasury securities in question had not "any connection

whatever with the business of transportation carried on by complainant, and that none of said stocks, bonds or other properties covered or represented the physical railroads or other properties operated by complainant."

In criticism of the conclusions of the court upon these and some other points, a most elaborate argument is submitted; but we see no sufficient ground for disturbing the decision.

*Decrees affirmed.*

MR. JUSTICE HOLMES, MR. JUSTICE BRANDEIS and MR. JUSTICE CLARKE dissent in Nos. 643 and 645. In Nos. 642 and 644, they concur in the result.