## CHICAGO, I. & L. RY. CO. v. LEWIS et al.

(District Court, E. D. Kentucky. November 11, 1925.)

1. Taxation  ⬥611(6)—Railroad company, claiming certain property was no part of general business unit, so as to be considered in determining franchise tax, must clearly show separation of such property from business of corporation, and that property had no connection therewith (Const. Amend. 14).

Railroad company, claiming that certain property included by state of Kentucky in determining franchise tax was no part of its general business unit, and taxation thereon was in violation of Const. Amend. 14, must make clear showing that there was separation of such

property from business of corporation and that property had no connection therewith, so as to be treated as part of general business unit.

**2. Taxation ⟨⟩376(1).**

In absence of anything to contrary, property owned by corporation should be taken as having organic connection with business it is authorized to transact.

**3. Taxation ⟨⟩376(1)—In absence of showing that treasury securities held by railroad had no organic connection with operation of railroad, they will be held to have connection, and will be considered in determining valuation for purpose of franchise tax.**

In absence of showing that treasury securities held by railroad did not have organic connection with operation of railroad, it must be taken that they had such connection, and must be considered in determining valuation.for purpose of assessing franchise tax.

**4. Taxation ⟨⟩376(1).**

Rental received by railroad from buildings and land in another state will be excluded, in determining valuation for franchise tax, in view of concession by taxing commission.

**5. Taxation ⟨⟩376(1)—In determining valuation of railroad for purpose of franchise tax, deduction from gross earning should be made for equipment and joint facility rents in ascertaining net earnings to be capitalized (Interstate Commerce Act, § 15a, as added by Transportation Act, § 422 [Comp. St. Ann. Supp. 1923, § 8583a]).**

Tax Commission, when determining valuation of railroad for purpose of assessing franchise tax, erred in failing to deduct equipment and joint facility rents from plaintiff's gross earnings, in ascertaining net earnings to be capitalized, particularly in view of Interstate Commerce Act, § 15a, as added by Transportation Act, § 422 (Comp. St. Ann. Supp. 1923, § 8583a), authorizing deduction therefor in computing valuation for rate-making purposes.

**6. Taxation ⟨⟩376(1)—Valuation of railroad operating freight trains only on portion of mileage within state should be determined, for purpose of assessing franchise tax, by apportioning valuation accruing to proportion of freight mileage and passenger mileage to entire mileage.**

Where railroad company operated portion of its lines within state, running passenger trains on whole portion and freight trains on only part thereof, valuation of such mileage for purpose of assessing franchise tax should be computed on basis of proportion of mileage operated with passenger trains to entire mileage, and proportion of freight mileage to entire mileage, where railroad's report showed both freight net earnings and passenger net earnings.

In Equity. Suit by the Chicago, Indianapolis & Louisville Railway Company against John B. Lewis and others, State Tax Commissioners of Kentucky, and others. On application for temporary injunction. Granted.

Trabue, Doolan, Helm & Helm, of Louisville, Ky., for plaintiff.

Frank E. Daugherty, Atty. Gen., for defendants.

Before DENISON and MOORMAN, Circuit Judges, and COCHRAN, District Judge.

PER CURIAM. The injunction sought is to enjoin the state tax commission from certifying for the year 1923 any greater assessment of plaintiff's franchise than $115,-875.50. The commission tentatively assessed that franchise at $516,420, and plaintiff claims that the assessment should not be greater than $115,875.50. The plaintiff is an Indiana corporation and citizen, and all the defendants .are Kentucky citizens. The railroad which plaintiff operates is located in the states of Indiana and Illinois and slightly in Kentucky. The entire number of miles operated by it is 649.01. The portion which it operates in Kentucky is, first, over the track of the Kentucky & Indiana Terminal Company, a distance of 1.54 miles, and then over the track of the Louisville & Nashville Railroad Company, a further distance of .5.35 miles, making a total mileage of 6.89 miles in Kentucky. It operates its freight trains only over the former track. Its passenger trains it operates over both tracks; i. e., the entire mileage in Kentucky.

The franchise of plaintiff, assessable under the laws of Kentucky, is its intangible property therein. The value thereof was ascertained in the usual way; i. e., by first ascertaining and determining the value of its entire assets, then apportioning to Kentucky the same proportion of such value which its mileage in Kentucky bears to the entire mileage, and, finally, deducting from such portion thereof the value of its tangible property in Kentucky. It ascertained the value of the entire assets by the capitalization method. It determined the value thereof to be sum of which the average of the net income for 1923 and 1922 was 7 per cent.

The plaintiff complains of the tentative assessment in three particulars:

1. The commission included in the net income, so capitalized, income from property whose situs was outside of Kentucky, which plaintiff, in its report to the commission, characterized as "nonoperating income." It is thus listed in that report:

Chicago, Indianapolis & Louisville Railway Company.

Statement Showing in Detail Nonoperating Income for the Calendar Years 1923 and 1924.

| | 1923. | 1922. |
|---|---|---|
| Rental received from buildings and land located in Indiana not used in operation, less expense of upkeep | $ 4,288 25 | $ 7,455 60 |
| Dividends received on stock of Chicago & Western Indiana Railroad Company | 85,000 00 | 60,000 00 |
| Dividends received on stock of Belt Railway Company of Chicago | 14,400 00 | 14,400 00 |
| Interest received on bonds of Chicago & Western Indiana Railroad Company | 27,469 98 | 29,120 01 |
| Interest received on bonds of the Vigo Mining Company | 9,000 00 | 9,000 00 |
| Interest received on note of Terminal & Warehouse Company of Louisville | 1,036 12 | 1,349 59 |
| Interest received on small promissory notes | 114 22 | 6 81 |
| Interest on funds expended for additions and improvements to the property during the construction period | 5,783 79 | 4,442 17 |
| Interest received from Indianapolis Union Railway on amounts due from city of Indianapolis for track elevation work | 246 26 | |
| Interest earned on bank balances: | | |
| Continental & Commercial Bank, Chicago, Illinois | 1,344 48 | 1,417 13 |
| Citizens' Union National Bank, Louisville, Ky | 1,391 02 | 2,088 36 |
| First Merchants' National Bank, La Fayette, Ind | 1,419 18 | 1,244 72 |
| First Trust & Savings Bank, Chicago, Ill. | 202 60 | 4,389 54 |
| Fletcher American National Bank, Indianapolis, Ind | 1,335 26 | 1,026 50 |
| Indiana National Bank, Indianapolis, Ind. | 1,080 04 | 1,010 37 |
| First National Bank of Chicago, Chicago, Ill | 1,750 28 | 1,213 59 |
| Central Trust Company of Illinois, Chicago, Ill | 256 82 | 43 99 |
| J. P. Morgan & Co., New York, N. Y | 2,061 19 | 2,330 93 |
| Guaranty Trust Company, New York | 119 61 | |
| Fidelity & Columbia Trust Company, Louisville, Ky | | 24 17 |
| Chicago Junction Railway (agent) Chicago, Ill | 218 41 | 197 46 |
| Rental received under contract from E. J. & E. for tracks between Dyer, Ind., and Illinois state line, and not used by them | 6,000 00 | 6,000 00 |
| Amount received for exchanging registered for coupon bonds, etc. | 11 00 | 16 00 |
| Amount received for granting exclusive privilege to transfer hand baggage at Mitchell, Ind. | 5 00 | |
| Total | $165,033 51 | $146,744 94 |

Office of Assistant Comptroller, Chicago, Ill. November 17, 1924.

What is thus set forth is all the information in regard thereto which the record contains. The inclusion of this income in the net income capitalized is complained of. It is urged that by so doing the commission taxed property outside of Kentucky, and that therefore its action was in violation of the Fourteenth Amendment, in that it deprives it of its property without due process of law. It cites in support of its position, the decisions in the cases of Coulter v. Weir, 127 F. 897, 62 C. C. A. 429, and Fargo v. Hart, 193 U. S. 490, 24 S. Ct. 498, 48 L. Ed. 761.

These two decisions were rendered not far apart in time—the former February 13, 1904, and the latter March 21, 1904. The former case involved the validity of an assessment of the franchise of the Adams Express Company in Kentucky by the then assessing authority, known as the "board of valuation and assessment." That company, having accumulated a surplus of more than $12,000,000, separated it from its business and invested it in bonds, stock, etc., which securities it transferred to a trust company in New York, and then issued to its stockholders as a distributive share thereof its bonds at par, payable only out of those securities so deposited, as a special dividend, retaining certain rights therein, by which, in certain contingencies, creditors might reach them. It was held that such securities could not be included in the assessment of the express company's franchise in Kentucky. The court said:

"It was the plain duty of the board, upon a showing being made, to eliminate from the gross value of the company's franchise or intangible property such part of that gross value as was produced by special investments having a situs outside the state, which were not used in the conduct of the company's business, and were not a part of the general business unit, a part of which was taxable by the state of Kentucky."

The latter case involved the validity of an assessment of the property of the American Express Company in Indiana by the proper assessing board thereof on the mileage basis. The company owned $15,500,000 of securities whose situs was in New York. It was held that those securities could not be valued, as a part of the assets of the company in ascertaining the portion thereof, located and subject to assessment in Indiana. It did not appear that there had been any such separation of these securities from the company's business as was had in the Adams Express Company Case, but it was conceded that they were not used in and had no connection therewith, other than as giving credit to the company. It was said by the court:

"We come back to the question whether the taking of personal property outside the state into the assessment can be justified on the ground that it gives credit necessary for the business in the state."

It was held that this was not a sufficient basis for including the securities in the assessment. These are the only cases in which it has been held that, in apportioning to one state, for taxation therein, a part of the valuation of the property of a general business unit covering several states, on the mileage basis, certain of its property having a situs elsewhere should not be included in the valuation.

But they are not the only cases bearing on this question. The decision in the case of Illinois Central R. R. Co. v. Greene, 244 U. S. 555, 37 S. Ct. 697, 61 L. Ed. 1309, which went up from this court, has to be reckoned with. That case involved the validity of an assessment by the board of valuation and assessment of Kentucky of the franchise of the Illinois Central Railroad Company therein. The assessment seemed to have included certain treasury securities, whose situs was outside of the state. The plaintiff in an amended bill had alleged that these securities had not "any connection whatever with the business of transportation carried on by complainant, and that none of said stocks, bonds, or other properties covered or represented the physical railroads or other properties operated by complainant." This court held that the assessment was not invalid to the extent that those securities were included in the valuation of the property of the general business unit of plaintiff. The grounds of its holding are thus stated in the opinion of the Supreme Court:

"That plaintiff had not made an adequate showing to the board of valuation and assessment, that it did not appear but that the board had given proper consideration to them, and that plaintiff had not put the court in possession of the evidence upon which to determine whether the securities were a part of its 'unit,' or why the securities were held by plaintiff, instead of being distributed to the stockholders, and that the case of Coulter v. Weir, 127 F. 897, 909, 911 [62 C. C. A. 429], did not apply, because there the property in question had been placed in the hands of trustees for the benefit of stockholders."

[1, 2] The Supreme Court affirmed the action of this court in this particular. It is not clear just how far the court approved the grounds upon which the action was based. It did not express disapproval of any of them. On petition for rehearing the plaintiff insisted that, if the treasury securities were to be taken as a part of the unit, then, since these securities represented a controlling interest in certain large lines of railroads lying outside of Kentucky, the apportionment should take these controlled lines into consideration, which would substantially reduce the ratio of Kentucky mileage to entire mileage, and the part of the valuation of the whole to be apportioned to Kentucky. This court responded to this that the suggestion came too late, and the Supreme Court held that it could not be said that this was an unreasonable view, or showed an abuse of discretion. Possibly that court took the petition for rehearing to be an acquiescence in the action of this court in treating those securities as a part of the general business unit.

The decision would seem to justify the position that the fact that certain property of a franchise corporation, operating a line, material or immaterial, covering certain states, a part of which is in Kentucky, is no part of such line, and that its situs is outside thereof, is not, in and of itself, sufficient to require that it be excluded from its general business unit in the valuation thereof, to ascertain the portion of such valuation to be taxed in Kentucky. Property of such a corporation may be no part of its line, and yet be a part of its general business unit. It may have such connection with the operation of the line as to constitute a part of the general business unit; i. e., be in organic relation to it. It is therefore incumbent on such corporation to make clear, as was done in the Express Company Cases, where there was a separation of the property in question to a greater or less extent from the business of the corporation, that such property had no such connection, if it is not to be treated as part of the general business unit. In the American Express Company Case Chief Justice White and Justices Brewer and Day dissented from the conclusion there reached, seemingly being of the opinion that the fact that the property in question gave credit to the company was sufficient to require its being treated as a part of its general business unit.

Here the defendant seemingly bases its claim that the income in question should be excluded in valuing its general business unit merely on the ground that it did not arise from the operation of its railroad line, and hence properly characterized by it as nonoperating income. It has made no attempt to show that the property from which this income arose had no organic connection with such line. On its books it has kept its income from freight and passenger service separately, and has divided this income between the two in the same ratio which the income from the one bears to that from the other. This would seem to indicate that it thinks that this

property has some organic connection with its railroad line, though it claims that such division is purely arbitrary. In the absence of anything to the contrary, property owned by a corporation should be taken as having an organic connection with the business which it is authorized to transact. Otherwise it may be said that it has no right to own it. If the state where it is located should attempt to escheat the property in question here, or a stockholder should seek to have it sold and proceeds distributed amongst the stockholders, it is not unlikely that the plaintiff would be able to establish that it had an organic connection with its business.

In the Illinois Central Railroad Company Case, after it had been held that there was a lack of evidence that the treasury securities in dispute had no organic connection with its business, it set forth that it had, and by reason thereof there was a larger unit for valuation. It would seem to be clear that the bank balances, from which a substantial part of the nonoperating income was derived, had such connection. They arose from the receipts from the operation of plaintiff's line of railroad, and were held to further the continued operation thereof. One of these balances was with a Kentucky bank. The plaintiff concedes that this item is debatable.

[3, 4] The principal items are dividends on stock and interest on bonds of the Chicago & Western Indiana Railroad Company, dividends on stock of the Belt Railroad Company and interest on certain bonds, notes and funds expended, mainly what may be termed treasury securities. What connection they have with the operation of plaintiff's railroad does not appear. It is possible that they had an organic connection therewith. In the absence of a showing that they do not, it should be taken that they did. There is no other way to account for their existence. A large item is for rental from another carrier for the use of plaintiff's tracks in Indiana. On the face of things this would seem to have organic connection with plaintiff's operation. Another large item is for rental received from buildings and land in Indiana. There is more reason for excluding this than any of the other items. As defendant concedes that it should be excluded, it is so held.

[5] 2. In the interchange of cars between railroad carriers, federal law requires every carrier to permit its cars to go to destination without breaking bulk. Each company handling the car pays to the owner of it $1 per day while it is in its possession whether in transit, in shop, or on demurrage. The payments so made are termed "equipment rents." The plaintiff, in its report to the state tax commission, deducted from its gross income $870,051.53, paid by it on account of equipment rents in excess of receipts by it from such rents. It likewise deducted therefrom $712,204.99, paid out by it as rents for joint facilities; i. e. for facilities furnished it by other carriers used jointly with them. It is said that the commission capitalized these two items in ascertaining the value of plaintiff's business unit.

Complaint is made of this by plaintiff. That the commission was in error here can be made plain by a little clear thinking. In the first place, it should be realized that, however it may have been in form, what the commission really capitalized was not what plaintiff had paid out on account of these rents. It capitalized nothing but what plaintiff had received, not what it paid out. The complaint in question, to put it as it should be, is that in capitalizing plaintiff's net earnings it made no deduction from its gross earnings of what it had thus paid out. The net earnings which it capitalized were by the amount of the sums so paid greater than they should have been. So the question here is whether the commission, in ascertaining the net earnings to be capitalized, should have deducted from the gross earnings the amount so paid. Conceivably the gross earnings or receipts of plaintiff in Kentucky, without any deduction whatever therefrom on account of disbursements, are subject to taxation. But that is not what is subjected to taxation by the legislation involved here. It is a property tax only, and, as said heretofore, the property taxed, termed "franchise," is the intangible property of the corporation. It may be said that what is taxed is the value of the corporation's property over and above its value as determined by the other assessing officers.

It is intended to secure the taxation of its property at its real value. The sole bearing of the earnings of the corporation is in determining the real value of its property, from which is to be deducted the other assessment; and here it is the net earnings which have bearing, not the gross earnings. If there are no net earnings, the property cannot be presumed to be of any greater value than the other assessment, and there is no franchise, or intangible property, to be taxed. If the corporation does not own the property, and is merely lessee thereof, all that it has to be taxed is its leasehold. That is all that it owns; and its value depends upon its net earnings. To the extent only that the gross earnings exceed rent paid and necessary expenses of operation does the leasehold appear to have value. In determining its value the rent paid the lessor should be deducted from

gross earnings, as much as the wages paid its employees. It follows, then, that in such a case, in valuing the franchise of such a corporation, rents paid should be deducted from gross earnings to ascertain net earnings to be capitalized. This is as it should be. The value of the property, enhanced by the rents received from the lessee, is taxed as against the lessor. The commission, therefore, were in error in not deducting equipment and joint facility rents from plaintiff's gross earnings in ascertaining net earnings to be capitalized.

It is urged on behalf of defendants that if plaintiff, instead of leasing this equipment and these facilities, had purchased them outright with money borrowed, it would not have been entitled to deduct the interest on the moneys so borrowed from its gross earnings in determining the net earnings to be capitalized. This is undoubtedly so. But it does not follow from this that the commission was right in not deducting the rents in question in determining plaintiff's net earnings to be capitalized. In that case the plaintiff would have owned the entire interest in the property to be taxed. No one else would have had an interest therein. The state would have been entitled to have it assessed at its real value for taxation; and the plaintiff would not have been entitled to deduct therefrom any indebtedness which it owed, not even what it owed on account of the purchase price of the equipment or joint facilities. The real value of the property would have been determined by a capitalization of the net earnings, which would have been the gross earnings less the operating expenses. The interest paid on the money borrowed to purchase the equipment and joint facility rents would not have been an operating expense. It was money paid for the use of the money borrowed. To deduct same from the gross earnings, to ascertain the net earnings for capitalization, would be in effect to allow plaintiff, in that contingency, to deduct from its assessment its indebtedness incurred in the purchase.

It is further urged that, if a corporation subject to franchise tax should lease its entire property, and its gross earnings did not exceed rent paid and other expenses incurred in operation, it would not be subject to any tax. Such a condition of things could hardly last for any length of time; but, if it should endure, this would be true, and it would be as it should be. It is to be borne in mind that the tax is not upon gross earnings, but a property tax, ascertained by capitalizing net earnings. If such rents are not to be deducted from gross earnings in ascertaining net earnings for capitalization, either that por-

tion of the gross earnings of the lessee is used twice in capitalization for taxing—i. e., against both the lessees and the lessor—or not against the lessor at all, neither of which alternatives is right. What is right is that they should be used in capitalizing as against the lessor, but not against the lessee.

Section 15a, added by the Act of Congress approved February 28, 1920, known as the Transportation Act, in providing for valuation for rate purposes, says:

"And the term 'net railway operating income' means railway operating income, including in the computation thereof debits and credits arising from equipment rents and joint facility rents." Comp. St. Ann. Supp. 1923, § 8583a.

There is as much reason for deducting such rents in ascertaining value for taxing purposes as for rate-making purposes. As upholding the position here taken reference may be had to the cases of Com. v. Phila. & E. R. R. Co., 164 Pa. 252, 30 A. 145, and State v. Minn. & I. Ry. Co., 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426.

[6] 3. In apportioning to Kentucky a part of the value of plaintiff's general business unit, the commission proportioned the entire mileage operated by it in Kentucky, to wit, 6.89 miles, to its entire mileage in Kentucky and elsewhere, to wit, 649.01 miles. The plaintiff complains of this. It did and does not operate the entire mileage in Kentucky with both freight and passenger trains. It only operated 1.54 miles thereof—the portion operated under contract with the Terminal Railroad Company—with both such trains. The other portion, 5.35 miles, which it operates under contract with the Louisville & Nashville Railroad Company, it operates with its passenger trains only. The plaintiff claims that the entire passenger net earnings should be capitalized, and there should be apportioned to Kentucky the same proportion of such valuation that the mileage operated in Kentucky with passenger trains, to wit, 6.89 miles, bears to the entire mileage operated in Kentucky and elsewhere, to wit, 649.-01 miles, and that the entire freight net earnings should be also capitalized, and there should be apportioned to Kentucky the same proportion of the valuation thus ascertained that the mileage operated in Kentucky, to wit, 1.54 miles, bears to entire mileage operated in Kentucky and elsewhere, treating the mileage as operated in Kentucky as 1.54 miles, to wit, 643.66 miles. These two apportionments, added together, make up the part of the entire value of plaintiff's general business unit to be apportioned to Kentucky, and

from which the assessment of tangible property is to be deducted.

We think this contention of plaintiff is sound. The report of plaintiff to the commission shows both freight net earnings and passenger net earnings, so that this method can be pursued. The trouble with the method pursued by the commission is that it taxes in Kentucky a portion of plaintiff's property situated outside the state. In Fargo v. Hart, supra, it was said: "So long as it fairly may be assumed that the different parts of a line are about equal in value, a division by mileage is justifiable."

Here the condition is exceptional. As to the mileage outside of Kentucky, it is to be assumed that it is operated with both freight and passenger trains. If this is so, each mile outside of Kentucky is of greater value than each mile of the mileage in Kentucky operated only by passenger trains. This situation can only be met, and is met, by the method of valuation contended for by plaintiff.

The plaintiff is entitled to a preliminary injunction in accordance herewith.