## C. C. THOMPSON POTTERY CO. v. ROUTZAHN, Collector of Internal Revenue.

District Court, N. D. Ohio, E. D.   December 3, 1927.

No. 14014.

1. **Internal revenue** 🔑**38(12)—Commissioner's determination of corporation's invested capital is prima facie correct, and taxpayer must clearly show value of property exceeding par value of stock (Revenue Act 1918, § 326(a); Comp. St. § 6336⅟₁₆i(a).**

Determination of Commissioner of Internal Revenue, under Revenue Act 1918, § 326(a), Comp. St. § 6336⅟₁₆i(a), as to actual invested capital of corporation, is prima facie correct, and burden rests on complaining taxpayer to prove contrary by preponderance of evidence, by clearly and satisfactorily establishing value of corporation's property exceeding par value of stock issued in exchange.

2. **Internal revenue** 🔑**38(12)—Evidence held to support Commissioner's finding as to value of invested capital of corporation, as against taxpayer's claim for greater valuation (Revenue Act 1918, § 326(a), Comp. St. § 6336⅟₁₆i(a).**

Determination of Commissioner of Internal Revenue as to value of corporation's invested capital, under Revenue Act 1918, § 326(a), Comp. St. § 6336⅟₁₆i(a), by which corporation's property was found to have value exceeding par value of stock issued therefor, *held* supported by evidence as against taxpayer's claim that property had even greater value, in view of taxpayer's previous returns, which claimed lower cash value at time when less advantage was to be derived to taxpayer from having value fixed at a high figure.

At Law. Action by the C. C. Thompson Pottery Company against C. F. Routzahn, Collector of Internal Revenue, to recover back corporation income and profit taxes paid under protest. Judgment ordered for defendant on settlement of findings in conformity to District Court rule 34.

Andrews & Belden, of Cleveland, Ohio, for plaintiff.

A. E. Bernsteen, U. S. Atty., and Irene Nungesser, Asst. U. S. Atty., both of Cleveland, Ohio, and C. M. Charest, Gen. Counsel, and Henry A. Cox, Atty., of Bureau Internal Revenue, both of Washington, D. C., for defendant.

WESTENHAVER, District Judge. This action is to recover back corporation income and profit taxes amounting to $5,860.87, exclusive of interest, assessed for the calendar year 1918, and paid under protest. Jury trial has been waived in writing. All necessary jurisdictional conditions precedent have been complied with. The controversy involves the determination by the Commissioner of Internal Revenue of plaintiff's invested capital, and the correctness of this determination turns on his valuation of certain real estate and buildings acquired by plaintiff as of December 28, 1916, and in payment for which were issued 500 shares of capital stock of the aggregate par value of $50,000.

Section 326(a), Revenue Act of 1918 (Comp. St. § 6336⅛i(a), pursuant to the provisions of which this determination was made and the tax assessed and collected, is in part quoted in the margin.[1] As will appear therefrom, the test inquiry is the actual cash value of the real estate and buildings December 28, 1916, when the same were acquired. Under the law, when property is acquired and paid for by the issue of shares of stock, the invested capital shall not exceed the par value of the original stock or shares so issued, except upon a specific finding by the Commissioner of an excess value. The law says that the actual cash value must be "shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus." The Commissioner found this actual cash value to be $122,666.67, an excess of $72,666.67 over the par value of the capital

stock issued in payment. Plaintiff claims a greater value.

[1] Defendant urges that the Commissioner's finding is conclusive, in the absence of fraud or abuse of discretion, or the adoption of some fundamentally wrong theory in weighing the evidence, or failure to take into account all relevant and pertinent evidence offered. In support of this contention are cited Ray Consolidated Copper Co. v. United States, 268 U. S. 373, 45 S. Ct. 526, 69 L. Ed. 1003; Park Falls Lumber Co. v. Burlingame (7 C. C. A.) 1 F.(2d) 855; Illinois Central R. R. Co. v. Greene, 244 U. S. 555, 562, 37 S. Ct. 697, 61 L. Ed. 1309. These authorities tend to support the contention, but, in the light of other and more pertinent authority, I am of opinion that the law is otherwise. See Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. ——, U. S. Supreme Court, decided November 21, 1927; United States v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131; Fidelity & Columbia Trust Co. v. Lucas (D. C.) 7 F.(2d) 146. This last case was cited with approval in the Wickwire Case, and must be regarded as a correct exposition of the law. The opinion of District Judge Dawson covers the question fully, and no supplement is required. Briefly stated, the correct rule is that the determination of the Commissioner of Internal Revenue is prima facie correct; that the burden of proof rests upon the complaining taxpayer to prove the contrary by a preponderance of the evidence; and that the heaviest burden that can be imposed on him is the same as is imposed on the Commissioner—i. e., that to obtain an allowance of invested capital greater than the par value of stock issued in exchange for property, he must clearly and satisfactorily establish such excess value. This case will be disposed of in accordance with these principles.

[2] The main facts only will be summarized. In December, 1916, when this land and these buildings were acquired, their aggregate assessed valuation was $54,670. The law of Ohio then required land and buildings to be assessed at their true cash value in money. On February 12, 1917, plaintiff's president and secretary, under oath, made a capital stock return for the fiscal year ending June 30, 1916, in which they stated that the fair average value of the corporate stock was $100 a share, or a total fair value of $100,000 for the outstanding issue of 1,000 shares. On July 5, 1917, plaintiff's secretary and treasurer made another capital stock return for the fiscal year ending June 30, 1917. In this return was included 500 additional

---

[1] "Sec. 326(a). That as used in this title the term 'invested capital' for any year means (except as provided in subdivisions (b) and (c) of this section). * * *

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus."

shares issued in the preceding December for the land and buildings in question, and again they fixed the fair average value of the capital stock at $100 a share, or $150,000 for the outstanding issue of 1,500 shares. The return disclosed losses from operation during the calendar years 1913 and 1914, and only claimed average profits or earning capacity per share from 1912 to 1916, inclusive, of 4 per cent. on the outstanding capital. The return also states the highest price at which any stock was sold as $100 a share in July, 1916, and $100 in January, 1917.

On October 3, 1917, Congress enacted a war excess profits taxes act (Comp. St. §§ 6336⅛a–6336⅛o) graduated in proportion to the ratio which the income bore to the invested capital. This new taxing law made it to the interest of corporations to claim a large invested capital, whereas previous laws had made it to their interest to claim a low invested capital. On August 30, 1918, plaintiff, under the oath of its president and treasurer, filed another capital stock tax return for the calendar year ending June 30, 1918. In this return the fair average value of the total capital stock was increased from $150,000 to $380,125.25, the increase being entirely made up by raising the value of the land and buildings acquired in December, 1916. The value of the real estate was fixed at $38,850, and of the buildings at $92,666.-67. The return discloses no information as to the prices at which shares of stock had been sold during the year, but does make a showing of average earnings for the years 1913 to 1917, inclusive, somewhat higher than in the preceding term, being mainly due to large profits earned during the last year. Even so, the average earnings or profits for the entire period are given at 7 per cent. on the outstanding capital stock.

The Revenue Act of 1918, under which the present tax was assessed and collected, imposed a still higher rate and created a still stronger motive to establish a larger invested capital. Plaintiff made the return under this act on or about June 15, 1919, in which the value of its invested capital was again increased. Inasmuch as no new property had been acquired, and no new money paid in, the increase was accounted for by raising the value of the land as of December, 1916, to $70,000, and of the buildings to $123,472.63, making an aggregate value for these two items, originally paid for by the issue of $50,000 of stock at par value, of the sum of $193,472.63. Upon the final examination and audit of this return, the Commissioner disallowed this increase over the previous year, and, after eliminating from the value of the buildings the sum of $8,850 for miscellaneous items of real estate owned prior to December 28, 1916, found the actual cash value of the land in December, when acquired, to be $30,000, and of the buildings, $92,666.-67. It is this finding of value which resulted in the increased assessment now sought to be recovered back.

All the foregoing facts were before the Commissioner. The only additional evidence submitted to the Commissioner was an appraisal made in the latter part of 1923 of the land and buildings. The appraisal of the land was made by three residents of East Liverpool, where the land is situated. Two only of those appraisers were called and gave testimony before us. They undertook to give opinions as to the value of land seven years after it was acquired. Opinion evidence of this nature is notoriously unreliable and speculative. It was not and could not be checked by actual sales. The real estate market in East Liverpool was inactive. The buildings were appraised by a firm of professional appraisal engineers of Chicago. In making the appraisal, one witness was sent to the site, found out by inquiry and otherwise the age and type of construction of the several buildings, and reported the same to the Chicago office. Another witness at that office, upon the basis of office record data as to labor and material costs in 1916 in East Liverpool, determined in 1923 their value as of December 28, 1916. This was done by determining the replacement cost of buildings of that type of construction and applying thereto a standard rate of depreciation. He did not, and, obviously, could not, take into account and give effect to other factors entering into the actual cash or salable value of these buildings.

The evidence before me is no different from and no stronger than the evidence submitted to and weighed by the Commissioner. Upon full consideration, it does not clearly appear that the real estate and buildings in question had a value clearly in excess of the amount found and allowed by the Commissioner. On the contrary, I think the weight of the evidence supports his finding. It is in accord with the valuation placed thereon under oath two years after the property was acquired, by those officers of the plaintiff best qualified to determine its value, and made at a time when it was to the company's interest to have that value fixed at a high figure. All the circumstances contemporary with or immediately succeeding the transaction, tending to reflect its value, make

in favor of the Commissioner's finding. That evidence is, in my opinion, entitled to greater weight than the opinion of real estate experts and of appraisal engineers made seven years later, after the dispute had become acute, for the purpose of establishing a still higher value. The explanations now given by plaintiff's witnesses as to why the earlier values were fixed so low are not convincing. The circumstances tending to discredit present opinions of past values are much weightier.

In conformity to the views herein expressed, judgment, with costs, will be rendered for the defendant. Findings of fact have been requested and will be made. Entry of judgment will be withheld until these findings can be settled in conformity to District Court rule 34. All proper exceptions may be noted.