# RAY CONSOLIDATED COPPER COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 443.   Argued January 13, 1925.—Decided May 25, 1925.

1. The term "capital stock" has no fixed meaning in taxing statutes, and must be interpreted in each case by reference to the context, the nature, purpose and history of the statute, and by other aids to construction. P. 376.
2. The Revenue Act of 1918 provides: "Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5000. In estimating the value

of the capital stock the surplus and undivided profits shall be included." *Held:*

(a) That "capital stock" here means the entire potentiality of the corporation to profit by the exercise of its corporate franchise; and the method for ascertaining the value, not being prescribed, is left to the sound discretion of the Commissioner of Internal Revenue subject only to the obligation to consider every relevant fact. P. 377.

(b) The net fair value of the corporate assets is clearly relevant; and adoption of this, rather than the value of the outstanding shares of stock as evinced by the average prices at which the shares were sold on the stock exchange, was not arbitrary nor an abuse of discretion. *Id.*

59 Ct. Cls. 686, affirmed.

APPEAL from a judgment of the Court of Claims denying a claim for recovery of the amount of an additional special corporation excise tax, paid under protest.

*Mr. Arthur A. Ballantine,* with whom *Messrs. Carroll A. Wilson* and *George E. Cleary* were on the brief, for appellant.

*The Solicitor General,* with whom *Messrs. Robert P. Reeder* and *Fred K. Dyar,* Special Assistants to the Attorney General, were on the brief, for the United States.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Revenue Act of 1918, February 24, 1919, c. 18, Title X, § 1000 (a) (1), 40 Stat. 1057, 1126, provides: "Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of the capital stock the surplus and undivided

profits shall be. included." How the value shall be deter-
mined is the main question for decision.

Ray Consolidated Copper Company, a domestic corpo-
ration engaged in the business of mining and smelting, has
a capital stock of $15,771,790, divided into 1,577,179
shares of common stock of the par value of $10 each.
Under the above provision, the company filed, on July 30,
1920, with the appropriate collector of internal revenue a
return for the special tax for the year ending June 30,
1921, in which it reported that the fair average value of
its capital stock for the preceding year was $34,803,608.99.
The value so reported was arrived at by finding the aver-
age selling price of the stock on the New York Stock Ex-
change during the calendar year 1919 and multiplying
the price so found—about $22 a share—by the number of
shares outstanding. The stock is listed on the New York
Stock Exchange; was traded in almost daily; and the
aggregate number of shares so sold during the year
equalled nearly one-third of the total stock outstanding.
The Commissioner of Internal Revenue refused to accept
the company's valuation; took into consideration for the
purpose of estimating the value of the capital stock,
among other things, the value of the mining property
theretofore established in connection with other federal
taxes; concluded that the fair value of the capital stock
considered as a whole was not materially less than the net
fair value of the assets; fixed the value of the capital
stock higher than the company had reported; and exacted
an additional tax. Refund being denied, this suit was
brought in the Court of Claims to recover the additional
amount paid. Before the trial the Commissioner re-
funded a part of the additional tax. As to the balance,
that court upheld the assessment. 59 Ct. Cl. 686. The
case is here on appeal under § 242 of the Judicial Code.

The Company insists that the term " fair average value
of its capital stock " means fair average value of the ag-

gregate shares of its stock and not the value of the corporate assets; that the fair average value of the shares, based upon *bona fide* sales of the stock in reasonable volume, was correctly stated in its return; that the aggregate value of the shares so determined by the fair average selling price of the individual shares must be adopted as the single standard for determining the value of the capital stock; that such determination cannot lawfully be modified by any consideration of the value of the corporation's assets; that the Commissioner based his determination upon the net fair value of the assets; and that the additional tax was, therefore, illegally assessed.

The tax is a special excise imposed on the privilege of carrying on business in the form of a corporation. Congress might have measured the value of the privilege by the net income of the year, as in the corporation tax, *Flint* v. *Stone-Tracy Co.*, 220 U. S. 108, 174; by the annual gross receipts, as in the sugar refiners' tax, *Spreckels Sugar Refining Co.* v. *McClain,* 192 U. S. 397; by the amount of capital employed, as in the bankers' tax, *Fidelity Title & Trust Co.* v. *United States,* 259 U. S. 304, 308; or by the fixed capitalization, as in the taxing acts of many states. It might have taken as the measure, the aggregate value of all of the outstanding shares of stock and have directed that their value be computed by multiplying the average selling price, during the year, of a single share by the total number of shares outstanding. Compare *The Delaware Railroad Tax,* 18 Wall. 206, 209, 231. But Congress did none of these things. It declared that the tax should be measured by the "fair average value of its [the corporation's] capital stock." In so doing, it used a term which has no fixed meaning in taxing statutes and it gave no directions for ascertaining such value, except that in "estimating" value "the surplus and undivided profits shall be included."

As the term capital stock has no fixed significance, it must be construed in a particular statute by reference to

the context, the nature and purpose of the statute, its history and other aids to construction.  We think that, as here used, it means the entire potentiality of the corporation to profit by the exercise of its corporate franchise.  *Central Union Trust Co.* v. *Edwards,* 287 Fed. 324, 328.  As the method to be pursued in ascertaining the value is not prescribed, we think that it was left to the sound judgment and discretion of the Commissioner, subject only to the obligation to take into consideration every relevant fact.  Compare *Louisville & Nashville R. R. Co.* v. *Greene,* 244 U. S. 522, 540.

The capital stock of a corporation, its net assets, and its shares of stock are entirely different things.  Compare *Farrington* v. *Tennessee,* 95 U. S. 679, 686; *Tennessee* v. *Whitworth,* 117 U. S. 129, 136–137; *Wright* v. *Georgia R. R. & Banking Co.,* 216 U. S. 420, 425; *Des Moines National Bank* v. *Fairweather,* 263 U. S. 103, 111. The value of one bears no fixed or necessary relation to the value of the other.  The net fair value of the assets was clearly a relevant fact bearing upon the value of the capital stock.  It does not appear that the Commissioner refused to consider the selling price of the shares or other factors.  He may have given much consideration to the selling price of the shares, and have concluded that, under the conditions prevailing in the year 1920, the average price at which relatively small lots were sold on the Stock Exchange was not a fair indication of the value of the capital stock.  We cannot say that he acted arbitrarily or abused his discretion in concluding that "the fair value of the capital stock considered as a whole is not materially less than the net fair value of the assets." *Illinois Central R. R. Co.* v. *Greene,* 244 U. S. 555, 562. In *Hecht* v. *Malley,* 265 U. S. 144, 162–3, where the provision here in question was upheld as applied to a voluntary association without a fixed or designated share capital, the Collector had assessed the tax by "taking the

fair value of the assets of the Association over its liabilities, and calling the difference its capital stock."

*Affirmed.*

MR. JUSTICE SUTHERLAND dissents.