## RANK et al. v. UNITED STATES.
### No. 7425.

Circuit Court of Appeals, Fifth Circuit.

Nov. 26, 1934.

Harvey R. Gamble, of El Paso, Tex., for appellants.

W. R. Smith, Jr., U. S. Atty., of San Antonio, Tex., and Walter S. Hunnicutt and Walter S. Howe, Asst. U. S. Attys., both of El Paso, Tex.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit is for sums claimed to have been overpaid as taxes on income. The claim is that the Commissioner overvalued preferred shares of stock in Midwest Dairies, Inc., owned by plaintiffs. The Commissioner valued stock, which in their returns plaintiffs had valued at $14.37 per share, first at $50 and later at $35, assessing plaintiffs' taxes on the latter figure.

In the claim for refund which plaintiffs filed after paying the tax and in the suit, they valued the stock at $26.14 per share. The District Judge thought the Commissioner's valuation should stand. He rendered judgment accordingly.

Plaintiffs come here complaining of the judgment, as they complained below of the Commissioner's findings as arbitrary and without evidence to support it. Appellee, pointing out that four different valuations have been from time to time placed upon the stock, two by plaintiffs, $14.37 and $26.14 respectively, and two by the Commissioner, $50 and $35, insists that this in itself is a conclusive answer to plaintiffs' claim that the evidence supports only the one valuation they now set, $26.14. It argues that this demonstration of how wholly a matter of opinion the valuation of the stock is convinces that the Commissioner's final conclusion, coinciding as it does with that of the trial court, is in law unassailable. It argues further, however, that, apart from this and apart from the verities which ordinarily and usually attach to the findings of the Commissioner, Ray Consolidated Copper Co. v. United States, 268 U. S. 373, 45 S. Ct. 526, 69 L. Ed. 1003, Argonaut Consol. Mining Co. v. Anderson (C. C. A.) 52 F.(2d) 55, Williams v. Com'r (C. C. A.) 45 F.(2d) 61, Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184, Reinecke v. Spalding, 280 U. S. 227, 50 S. Ct. 96, 74 L. Ed. 385, the evidence offered at the trial overwhelmingly supports the District Judge's conclusion as against the attempts of two owners of the stock to demonstrate the correctness of their present opinion of its value. The facts are few and without conflict. The Midwest Dairies, Inc., as a part of a general consolidation scheme, took over the business and assets of the Velvet Ice Cream Company, a partnership owned by Rank and Miller, paying them for it 4,000 shares of preferred stock, and nothing else. The stock was represented to Mr. Rank at the time of the trade, and was taken by him as worth $50 a share. It is undisputed that the Velvet Ice Cream Company was earning an amount equal to 10 per cent. on $200,-000 when it was transferred to Midwest Dairies, and that on this basis the 4,000 shares of preferred stock given in payment for it were worth $50 a share. In addition to the 6,850 shares of preferred stock issued to those whose plants were taken over in forming the consolidation, 5,310 shares more of preferred stock were issued in units composed of 1 share of preferred and 5 shares of common, and they were sold to the public at $50 per unit. The preferred stock was not traded in on any stock exchange, nor were any sales made of it except one sale appellant made to an employee of 100 shares at $50, nor was the common stock ever sold by itself. The directors, however, authorized the sale of 45,000 shares of common at $3 a share, without any takers. Each certificate of class A stock sold provided that its holder should receive dividends at the rate of $3.50 annually, cumulative and payable fully before any payment to the common stock, and each provided that in the event of liquidation it should receive $50 a share, together with accumulated dividends in preference to the common stock. The Com-

missioner based his original valuation of $50 a share on the fact that plaintiffs had taken the stock in payment at that express value, that the stock carried a guaranteed cumulative dividend of $3.50 annually, and that it had a guaranteed value ahead of the common stock of $50 a share in liquidation. He fixed his final valuation of $35 by taking the $3 value fixed for the common stock by the resolution of the directors offering 45,000 shares of it for sale at that figure. He then allocated $15 to the 5 shares of common and $35 to the 1 share preferred composing the unit.

Plaintiffs, abandoning their original valuation of $14.37 per share which they say they fixed on a consideration of tangible assets only, wholly disregarding good will value, now urge $26.14 as the proper value on the following bases: First, they give it as the opinion of Rank and Price, based upon their knowledge of the assets of the companies making up the consolidation, and of the consolidated company itself, that this value was a proper one. Rank, one of the plaintiffs in this suit, a part owner of the Velvet Ice Cream Company, was after the consolidation vice president of Midwest Dairies Inc. Price, who had been general manager of Price Dairy Company, one of the units sold Midwest Dairies in the consolidation, is plaintiff in a companion suit to this. Against their now stated opinion, however, stands their testimony that they accepted the preferred stock in the trade at a value of $50 a share, their original estimate of its value at $14.37, and the fact that, though the common stock which they now say is worth $24 was offered at $3 a share, they never bought a share of it.

In further support of their views as to the comparative value of the common and preferred stocks, they advance the dividends paid on each. They point out that each share of common received 60 cents, making the earnings of one unit for which $50 was paid $3 on the 5 shares of common, and $3.50 on one share of preferred. This method, basing on the earnings of the respective classes of stock, would have more substance if both stood in the same case. The preferred stock was, however, ahead of the common in all respects in dividends, and on liquidation, and more, had its dividends guaranteed by the total assets of the company, whereas whether and for how long any dividend would be earned on the common was most highly speculative. Because of these fundamental differences, the valuation of

each, arrived at by comparing actual earnings alone, must be rejected.

They rely, too, on the fact that the preferred shares carried an option to exchange them for common at one for three. The existence of this option, standing alone, is without significance. Proof that it was availed of, of course, would be, but there was no such proof. Nor could there have been, because, as the record stands, 1 share of preferred was of far greater value than 3 shares of common. Upon such a record of an express valuation fixed on the stock by the parties in their trade, supported as it is by other testimony in the case, if we were considering the case de novo, we should be compelled to conclude that a valuation of $35 for the preferred and $15 for the common stock was very liberal to the common. When we consider the matter in the light of the conclusive effect of the District Judge's confirmation of the findings of the Commissioner, no room is left for doubt that appellants' vigorously argued position has not been sustained.

The judgment is affirmed.