**MOUNTAIN IRON CO. v. UNITED STATES, and four other cases.**

Nos. 59, 61, 186, 197, 192.

District Court, D. Minnesota.

March 9, 1940.

Elmer F. Blu, Clarence J. Hartley, and Albert R. Morton, all of Duluth, Minn.,

Robert J. Flanagan and Ward B. Lewis, both of Minneapolis, Minn., Fred A. Ossanna and Edward J. Kotrich, both of Minneapolis, Minn., Leland W. Scott and John W. Windhorst, both of Minneapolis, Minn., for plaintiffs.

Paul S. McMahon, Sp. Asst. to Atty. Gen., Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., for defendant.

SULLIVAN, District Judge.

Each of the above entitled matters came on to be heard upon the motion of the defendant to dismiss the complaints in said respective actions, upon the ground that said complaints, and each of them, fail to state a claim upon which any relief can be granted.

In the Mountain Iron Company case, the plaintiff filed a capital stock tax return for the taxable year ending June 30, 1936, with, and paid taxes to the Collector of Internal Revenue for the District of Minnesota, in accordance with Section 105 of the Act of Congress approved August 30, 1935, known as the Revenue Act of 1935, as amended by Section 401 of the Act of Congress approved June 22, 1936, known as the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts. Thereafter, and in due time, said plaintiff filed a claim for refund of the taxes so paid. Said claim was rejected, and plaintiff brings this suit to recover the taxes so paid.

In the Oliver Iron Mining Company case, the plaintiff filed capital stock tax returns for the tax years ending June 30, in 1935 and 1936, respectively, with, and paid taxes to the Collector of Internal Revenue for the District of Minnesota, in accordance with the applicable statutes. Later, and in due time, this plaintiff filed claims for the refund of the taxes so paid. These claims for refunds were rejected, and the plaintiff now brings this suit to recover the taxes so paid.

In the Red Owl Stores, Inc., case, the plaintiff filed a capital stock tax return for the tax year ending June 30, 1933, with, and paid to the Collector of Internal Revenue for the District of Minnesota, taxes in accordance with Section 215 of the Act of Congress approved June 16, 1933, 48 Stat. 195, 207, commonly known as the National Industrial Recovery Act. Later, and in due time, said plaintiff filed a claim for the refund of the taxes so paid. This claim was rejected and plaintiff now brings

this suit to recover the amount of the taxes so paid.

In the Yellow Taxi Company of Minneapolis case, the plaintiff, pursuant to the provisions of Section 215 of the National Industrial Recovery Act, filed a return with, and paid to the Collector of Internal Revenue for the District of Minnesota, a capital stock tax for the tax year ending June 30, 1933. Later, and in due time, plaintiff filed a claim for refund of the taxes so paid. Said claim was rejected and plaintiff brings this action to recover the amount of taxes so paid.

In Pittsburgh Coal Company of Wisconsin case, the plaintiff filed a capital stock tax return for the tax year ending June 30, 1933, with, and paid to the Collector of Internal Revenue for the District of Minnesota, taxes in accordance with said Section 215 of the Act of Congress approved June 16, 1933, 48 Stat. 195, commonly known as the National Industrial Recovery Act; and likewise, pursuant to the provisions of Section 701 of the Act of Congress approved May 10, 1934, commonly known as the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Acts, the plaintiff filed a capital stock tax return for the tax year ending June 30, 1934, with, and paid to said Collector of Internal Revenue for the District of Minnesota, taxes in accordance therewith. Later, and in due time, plaintiff filed claims for the refund of the taxes so paid. These claims were rejected, and the plaintiff brings this suit to recover the amount of the taxes so paid.

### Statutes Involved.

Section 215 (a), National Industrial Recovery Act, 48 Stat. 195, 207, imposes on domestic corporations an annual tax with respect to the carrying on or doing business by a corporation for any part of the taxable year, an excise tax at the rate of $1 for each $1,000 of the adjusted declared value of its capital stock. Section 215 (f) thereof provides that: "For the first year ending June 30 in respect of which a' tax is imposed by this section upon any corporation, the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value cannot be amended), as of the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section. * * * " The same subdivision provides for an adjustment in this declared value for changes in the capital structure. Section 216 (a) thereof imposes an annual tax of 5 per cent. upon so much of the net income of a corporation taxable under Section 215 (a) as is in excess of 12½ per cent. of the adjusted declared value of its capital stock, as determined in Section 215.

The capital stock and excess profits taxes were reimposed by Sections 701 and 702 of the Revenue Act of 1934, 26 U.S.C.A. §§ 1358, 341, 26 U.S.C.A. Int.Rev. Acts, without making any change material to the matter now under consideration. The Act provided, however, that the declaration which was to be used as the basis of the 1934 and 1935 tax was required to be made within one month after the close of the fiscal year ending June 30, 1934. The basis for the 1934 tax was the declared value made for that year; and for the 1935 tax the basis was the declared value for 1934, adjusted to meet certain changes in capital structure.

Sections 105 and 106 of the Revenue Act of 1935 substantially re-enacted Sections 215 and 216 of the National Industrial Recovery Act, save in certain respects which are not deemed to be pertinent to the matter now under consideration. Section 105 (f) thereof provides that for the first year ending June 30, in respect of which a tax is imposed by this section upon any corporation, the adjusted declared value shall be the value, as declared by the corporation in "its first return under this section (which declaration of value cannot be amended)", as of its last income-tax taxable year for which the tax is imposed by this section (or as of the date of organization in the case of new corporations). The basis for the 1936 tax was the adjusted declared value for the year ending June 30, 1936.

Section 401 of the Revenue Act of 1936 amended the 1935 Revenue Act in respects not here material.

It is the contention of the plaintiffs that the capital stock tax is invalid on the grounds: (1) That it bears no relationship to the value of the capital stock, and is therefore arbitrary, capricious and wanting in classification, and is in violation of the Fifth Amendment to the Constitution of the United States; (2) that it is so indefinite on its face as to make the taxpayers guess at its meaning and act at their peril; and (3) that it is an unlawful delegation of power to the taxpayer to name the tax which it shall pay.

■ At the outset it may be stated that Congress has the power to establish a basis for a capital stock tax, if the Constitution of the United States is not offended in so doing. Flint v. Stone Tracy Company, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas. 1912B, 1312; Edwards v. Chile Copper Company, 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678.

Plaintiff argues that the capital stock taxes under the statutes involved are arbitrary, capricious and discriminatory to such a degree as to render the same invalid.

■ The apparent purpose of Congress in enacting these statutes was to tax excess profits. Sections 215 and 216 of the National Industrial Recovery Act demonstrate this. These sections should be read and considered together in determining the validity of the taxing acts. The context of the sections in subsequent capital stock and excess profits taxing acts is identical to said section, save and except as to the rate of the tax. Said sections "impose interrelated taxes on domestic corporations". Haggar Company v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 338, 84 L.Ed. ——, decided by the Supreme Court January 2, 1940.

The taxpayer under said taxing acts is permitted to fix for itself the value of the capital stock. The provisions of the different acts as to the finality of such determination are not pertinent to this inquiry. In commenting on the provisions of the taxing acts which permit the taxpayer to fix for itself the value of its capital stock, the Supreme Court, in Haggar Company v. Helvering, supra, said that: "Congress thus avoided the necessity of prescribing a formula for arriving at the actual value of capital for the purpose of computing excess profits taxes, which had been found productive of much litigation under earlier taxing acts, see Sen. Rep. 52, 69th Cong., 1st Sess., pp. 11-12; cf. Ray Consolidated Copper Co. v. United States, 268 U.S. 373, 376 [45 S.Ct. 526, 527, 69 L.Ed. 1003]. At the same time it guarded against loss of revenue to the Government through understatements of capital, by providing for an increase in excess profits tax under § 216 ensuing from such understatements."

■ By force of the interrelated features of the capital stock tax and the excess profits tax, the contentions of the plaintiff that the tax on the capital stock bears no relationship to its value, and by reason thereof is discriminatory and capricious, is refuted.

The declared value required for the purpose of fixing the capital stock tax is a controlling factor in the computation of the excess profits tax. While the declared value of the capital stock of a corporation is not by the statute required to specifically conform, either to the actual or the nominal capital of the taxpayer, and the taxpayer is left free to declare any value of its capital stock for its first taxable year and at such other times and under such circumstances as the statutes permit, however, its declaration of value once made is binding upon it and the government alike, with certain exceptions not here material. The dependency of the amount of the excess profits tax on the declared value of the capital stock is not only conducive and persuasive to a fair declaration of value, but is as effective in the accomplishment thereof as a mandatory direction by a statute that such be made.

We must bear in mind in considering the capital stock and excess profits taxing acts that it was the express intention of Congress to obtain, in the operation of the acts, a fair and reasonable declared valuation of capital stock.

In Senate Report No. 114, 73rd Congress, 1st Session, page 6, the following legislative history appears:

"Section 214[1] provides for a new tax similar in principle to the capital stock tax which was levied from 1916 to 1926. In order to avoid controversy as to the value of the capital stock, the tax is imposed on the value declared by the corporation. A reasonable value is, however, assured by means of an excess-profits tax imposed by Section 215[2] and based on the relation of the net income of the corporation to such declared value. * * *

"Section 215[2] imposes an excess-profits tax on corporations. The primary object of this tax is to induce corporations automatically to declare a fair value for their corporate stock under section 214[1]. The rate is 5 percent on the portions of the net income in excess of 12½ percent of the adjusted declared value of the stock of the corporation. * * * "

---

[1] Section 215, National Industrial Recovery Act.

[2] Section 216, National Industrial Recovery Act.

It should be the endeavor of a corporation to give a fair valuation of its capital stock. The taxpayer, when it elects a declaration, should, and no doubt does, consider the excess profits tax which will be computed on the basis of the declared value of its capital stock. It necessarily follows that if the taxpayer's declaration of value of its capital stock is proportionately low and it has requisite earnings, the excess profits tax will be proportionately greater than it would have been had a fair valuation been declared.

If the taxpayer is unfair in its declaration, it is penalized because of its action. Inequalities resulting thereby between taxpayers cannot be attributed to the taxing statutes, but must be recognized as being due entirely to the action of the taxpayer in failing to declare a fair valuation, and in failing to recognize the purposes of said taxing acts. The acts were drawn with the purpose of obtaining a capital stock tax on a fair capital stock valuation, and an excess profits tax based on earnings in proportion to a fair declaration of value. The section of the statute providing for a declaration of value must be construed and interpreted by reference to the context of the whole statute, the nature and purposes of Sections 215 and 216 of the National Industrial Recovery Act, and subsequent legislation, as to the same matters and their history. If the purposes of the act are not heeded by the taxpayer, it is penalized by the automatic operation of the two sections of the taxing act, and the resultant penalty arising from an unfair declaration of value should be, and no doubt is, a compelling factor in the observance by the taxpayer in making a fair declaration of value.

It is argued that no standard is set up in the statutes for making the declaration of value. This contention cannot be sustained. The capital stock and excess profits sections of the taxing acts must be considered together. The taxes imposed thereby are "interrelated" and when "so considered they are largely self-adjusting, resulting in a reasonable combined tax, both as to the particular taxpayer and in comparison with other taxpayers". Allied Agents, Inc., v. United States, Ct.Cl., 26 F.Supp. 98.

In Rosoff Tunnel Corporation v. Higgins, D.C.So.Dist.N.Y., 28 F.Supp. 880, 882, where, as here, the plaintiff contended that no guide or method was prescribed for the taxpayer in making the declaration of value, the Court stated: " * * * that contention cannot be sustained, because under this statute, the value to be placed upon the capital stock of a taxpayer is solely a matter within the power and control of the taxpayer. In such a case, there is 'no necessity for a guide or a method for making a statement of fact by one who is in possession of full information with reference to the subject.'" Chicago Telephone Supply Company v. United States, Ct.Cl., 23 F.Supp. 471, 476.

In the Allied Agents, Inc., case, supra, the constitutional questions raised here were considered by the Court of Claims, and in a well-reasoned and exhaustive opinion, that Court sustained the validity of the taxing statutes there involved (Sections 215 and 216 of the National Industrial Recovery Act; Sections 701 and 702 of the Revenue Act of 1934, and Sections 105 and 106 of the Revenue Act of 1935, as amended by Sections 401 and 402 of the Revenue Act of 1936).

The validity of certain of the taxing statutes here involved was considered and sustained in: Chicago Telephone Supply Company v. United States, supra, certiorari denied, 305 U.S. 628, 59 S.Ct. 92, 83 L.Ed. 402; Rosoff Tunnel Corporation v. Higgins, supra; Midvale Paper Board Company, Inc. v. United States, D.C.So. Dist.N.Y., 31 F.Supp. 851, decided February 20, 1940.

The statutes involved in these actions are, in my opinion, valid enactments, and therefore each of the above entitled actions should be dismissed.