## UNITED STATES STEEL PRODUCTS CO. v. UNITED STATES, and fourteen other cases.

Civil Nos. 432, 438, 439, 451, 455, 503, 504, 587, 614–618, 565, 664.

District Court, D. New Jersey.

Jan. 13, 1941.

Lindabury, Depue & Faulks, by James E. M. Tams, all of Newark, N. J. (White & Case, by A. Chauncey Newlin, Josiah Willard, and Winslow M. Lovejoy, all of New York City, of counsel), for plaintiffs in actions 432, 438, 439, 451, 455, 503, 504, and 587.

Whittemore & McLean, of Elizabeth, N. J. (Burlingame, Nourse & Pettit, of New York City, of counsel), for plaintiffs in actions 614, 615, 616, 617, and 618.

Frank H. Hall, of New York City (Elden McFarland, of Washington D. C., of counsel), for plaintiff in action 565.

Hobart, Minard & Cooper, by Duane E. Minard, all of Newark, N. J. (Spieth, Taggart, Spring & Annat, by W. H. Annat, all of Cleveland, Ohio, of counsel), for plaintiff in action 4851.

John J. Quinn, U. S. Atty., by William F. Smith, Asst. U. S. Atty., both of Trenton, N. J., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Paul S. McMahon, Sp. Assts. to Atty. Gen., of the Government.

FORMAN, District Judge.

The above suits have been brought to recover capital stock taxes paid by the plaintiffs under the several statutes imposing such taxes, and each is presently before the court on the government's motion to dismiss for failure to state a cause of action.

The statutes involved in these actions are Sections 215 and 216 of the National Industrial Recovery Act of 1933, 48 Stat. 207, 208, applicable to the capital stock tax year ending June 30, 1933, Sections 701 and 702 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, pages 787, 789, applicable to the capital stock tax years ending June 30, 1934, and June 30, 1935, and Sections 105 and 106 of the Revenue Act of 1935, 26 U.S.C.A. Int.Rev.Acts, pages 796, 800, applicable to the capital stock tax years ending June 30, 1936, and June 30, 1937. Sections 215 of the National Industrial Recovery Act of 1933, Section 701 of the Revenue Act of 1934 and Section 105 of the Revenue Act of 1935 each imposes a tax for each year ending June 30, 1933, 1934, 1935, 1936, and 1937, respectively, " * * * upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.40 for each $1,000 of the adjusted declared value of its capital stock."

The National Recovery Act of 1933, Section 215(c) (3), provides that the Act should not apply to any "domestic corporation in respect of the year ending June 30, 1933, if it did not carry on or do business during a part of the period from the date of the enactment of this Act [June 16, 1933] to June 30, 1933, both dates inclusive; * * * *."

Each enactment provides that for the first year in respect of which the tax is imposed "the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value cannot be amended), as of the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed * * * *"

As to subsequent years, each enactment provides that the adjusted declared value in the case of a domestic corporation shall be the original declared value plus the cash and fair market value of property paid in for stock or shares, paid-in surplus and contributions to capital (and in the case of the National Industrial Recovery Act, the "earnings and profits" of the corporation), and the net income of the corporation plus certain tax exempt income and minus the value of the property distributed in liquidation to shareholders, distributions of earnings or profits (and in the case of the National Industrial Recovery Act "deficits, whether operating or nonoperating"), and the corporation's loss for income tax purposes.

Each enactment imposes an excess profits tax upon the net income of every corporation subject to the capital stock tax based

upon the income of the income tax taxable year ending after the close of the capital stock tax year. Under the National Industrial Recovery Act and the Revenue Act of 1934, the rate of tax was 5% on all income in excess of 12½% of the "adjusted declared value" of the capital stock tax year ending prior to the income tax year. Under the Revenue Act of 1935, the rate was 6% upon that portion of net income in excess of 10% of such adjusted declared value and not in excess of 15% thereof, and 12% on all net income in excess of 15% of the adjusted declared value.

United States Steel Products Company v. United States of America, Civil No. 432.

American Bridge Company v. United States of America, Civil No. 438.

National Tube Company v. United States of America, Civil No. 439.

Federal Shipbuilding & Dry Dock Company v. United States of America, Civil No. 451.

American Steel & Wire Company of New Jersey v. United States of America, Civil No. 455.

United States Steel Corporation v. United States of America, Civil No. 503.

Carnegie-Illinois Steel Corporation v. United States of America, Civil No. 504.

Universal Exploration Company v. United States of America, Civil No. 587.

The above cases may be considered together. The complaints collectively allege capital stock payments under Section 215, supra, for the year 1933, Section 701, supra, for the years 1934 and 1935, and Section 105, supra, for the year 1936. Each individual complaint alleges that the acts imposing a capital stock tax, and the acts imposing an excess profits tax in relation to the capital stock tax " * * * are unconstitutional and void for the reasons, among others, that said statutes violate the provisions of the Fifth Amendment to the Constitution of the United States to the effect that no person shall be deprived of 'property without due process of law; nor shall private property be taken for public use, without just compensation;' and that said taxes are so arbitrary as to amount to confiscation and are so wanting in basis for classification as to produce gross and patent inequality."

The brief in this group of cases argues:

1. The capital stock tax is wholly unrelated to the actual value of the capital stock, because the declaration, once made, is binding, and for the reason that no standard is prescribed for the determination of such value. Hence, the act is arbitrary, capricious and wanting in classification.

2. For the same reasons the Act makes it possible for taxpayers under identical circumstances to pay different taxes. Hence, even if actual values were intended, the Act is grossly discriminatory and lacking in classification.

3. Since no standards are prescribed for ascertaining values, the taxpayer does not know whether real or fictional values are intended. Hence, the Act is indefinite.

4. The Act unlawfully delegates legislative powers.

5. The adjustment for subsequent years includes the original declaration of values, and the alterations to that value which in themselves are objectionable do not reflect current changes in the taxpayers' status.

Bourne & Company, Ltd., v. United States of America, Civil No. 614.

Diehl Manufacturing Company v. United States of America, Civil No. 615.

Poinsett Lumber & Manufacturing Company v. United States of America, Civil No. 616.

Singer Sewing Machine Company v. United States of America, Civil No. 617.

The Singer Manufacturing Company v. United States of America, Civil No. 617.

These cases may also be considered together. Herein, claims for refund are confined to taxes paid under Section 215 of the National Industrial Recovery Act of 1933. Each complaint alleges:

"8. Sections 215 and 216 of said National Industrial Recovery Act were unconstitutional and void, in violation of the Fifth and Tenth Amendments and of Article I, Section 9, clause 4 of the Constitution, in that they were unreasonable, arbitrary, capricious, discriminatory, took private property without due process of law and without compensation therefor, imposed a direct tax without apportionment among the States and invaded the rights and powers of the several States of the United States; said sections imposed excise taxes which were retroactive and thus unreasonable, arbitrary and capricious.

"9. If Section 215 of Title II of the National Industrial Recovery Act is valid,

Plaintiff was only liable thereunder for capital stock taxes for the period from June 16, 1933 [the effective date of said Act] to June 30, 1933, being that proportion of the capital stock tax computed and paid by Plaintiff for the year ending June 30, 1933, as the period from June 16, 1933 to June 30, 1933 bears to the taxable years July 1, 1932 to June 30, 1933."

The brief in this group of cases argues:

1. That the statute imposes a direct ad valorem tax on the corporation's franchise without apportionment among the states, with a consequent invasion of the rights of the states granting such franchises.

2. That, assuming the tax is an excise, because the National Industrial Recovery Act, imposing a capital stock tax for the year ending June 30, 1933, was not enacted until June 16, 1933, the statute is improperly retroactive.

3. That the statute is arbitrary in imposing a tax for the year ending June 30, 1933, and exempting therefrom corporations which did not do any business during the period June 16, 1933, to June 30, 1933.

4. That the statute is arbitrary because paragraphs 3 and 4 of Section 215(c) in effect provide for a taxable year of fifteen days, June 16, 1933, to June 30, 1933, which is in conflict with Section 215(a) and (b) imposing a tax for the year ending June 30, 1933.

Corn Products Refining Company v. United States of America, Civil No. 565.

The complaint in this case seeks a refund of taxes paid in 1933 under Section 215 of the National Industrial Recovery Act of 1933. It alleges unconstitutionality upon the following grounds:

1. Its provisions are uncertain, discriminatory, and capricious in that they permit taxpayers under identical circumstances to pay unequal amounts.

2. The original declared value does not reflect actual values.

3. The act does not permit correction of mistakes.

4. The act is vague in that it does not prescribe the method of ascertaining value.

5. The act unlawfully delegates legislative powers.

The brief in this case argues:

1. The capital stock tax is not predicated upon actual values, since no standard is prescribed for the determination of that value.

2. The act intends an arbitrary declaration of value, since no standard for ascertaining that value is prescribed.

3. The capital stock tax is unconstitutional unless its defects are cured by its inter-relation with the excess profits tax provisions of the same statute.

4. The inter-relation does not cure the defects of the capital stock tax, because there is no self-adjustment in any case where the taxpayer has been shrewd enough to guess and declare a stock value which is equal to or greater than eight times (12½% under the 1933 act) its future earnings (the excess-profits tax is imposed for the years following the filing of the capital stock tax return). Furthermore, the so-called "self adjusting features are not in fact self adjusting so long as the one tax is 1% and the other tax 5%.

6. If it were possible to amend the original declared value, then the two taxes would be self-adjusting, because, after the income for the subsequent year was determined, a new declared value could be used, thus permitting all corporations similarly situated to declare a value which would result in a minimum, and, hence, an equal total tax.

Seaboard Terminal & Refrigeration Company v. United States of America, Civil No. 664.

The complaint in this case seeks a refund of taxes paid under Section 215 supra in 1933 and Section 701 supra in 1934. The constitutionality of Sections 215 and 216, 701 and 702 is attacked on the following grounds:

1. The act exempts corporations not doing business between June 16 and June 30, 1933.

2. The act is unconstitutional because it limits the taxable year to fifteen days, i. e., June 16 to June 30, 1933.

3. The act imposes an excise tax retroactively.

4. The original declared value cannot be amended.

5. The act imposes an ad valorem tax without apportionment among the states.

6. The act arbitrarily classifies corporations for a special tax and discriminates against other forms of business.

7. If Section 215 is valid plaintiff is liable for taxes for the year 1933 only to

the extent that they be apportioned for the period June 16 to June 30.

8. The act constitutes an unlawful delegation of legislative powers.

The brief in this case argues:

1. Plaintiff has properly alleged a basis for challenging the constitutionality of the statute, since it has shown payment of the tax as well as invalidity on the face of the statute.

2. The statute is arbitrary and capricious in that any value may ·be declared irrespective of actual value.

3. The statute is indefinite in that the taxpayer is required to guess at its meaning, since no standard for ascertaining value is prescribed.

4. The statute is discriminatory and lacking in classification because the declared value need have no relation to actual value.

5. The statute unlawfully delegates legislative powers.

6. Adjustments for subsequent years do not reflect value because they include all the defects of the original declaration plus the defects inherent in the adjustment provisions of the statute.

The government argues in its brief:

1. Plaintiffs cannot challenge the statute because they do not claim that the declared or adjusted values were erroneous or that the amount of tax paid was arbitrary.

2. The question, therefore, is limited to a determination of whether any capital stock tax is constitutional.

3. The statute levies a constitutional excise tax upon the privilege of doing business.

4. The basis of that tax is constitutional.

5. There is no delegation of legislative power under the statute, because the taxpayer can affect no one but himself in his declaration of value.

6. The act is not void for indefiniteness and lacking in classification because a declaration of reasonable value is intended.

7. This court is bound by prior decisions.

■ We do not agree with the government's contention that plaintiffs are not in position to challenge the constitutionality of these statutes, because it is shown that payments thereunder have been made, and while no claim is asserted that the calculation of the tax declared, or of adjusted values were erroneous, or that the amount of the tax was arbitrary, the challenge is definitely made that the scheme of taxation proposed by the statutes was arbitrary and unconstitutional. We are concerned by the attack raised in these complaints against the scheme of taxation proposed in the statutes named, and not with the question as to whether *any* capital stock tax is constitutional as is argued by the government.

Objections that these capital stock tax statutes are arbitrary, indefinite, discriminatory, lacking in classification, and· without standard or method for determination, because the taxpayer as well as the government are bound by any declaration of value, real or fictitious; and the use of these values in subsequent years as adjusted, plus the contention that the statutes unlawfully delegate legislative powers, have all been considered in prior decisions. Haggar ·Co. v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340, reversing Haggar v. Helvering, 5 Cir., 104 F.2d 24; Hornell Ice & Cold Storage Co. v. United States, D.C., 32 F. Supp. 468; Stromberg-Carlson Mfg. ·Co. v. McGowan, D.C., 32 F.Supp. 101; Mountain Iron Co. v. United States, D.C., 31 F. Supp. 895; Midvale Paper Board Co. v. United States, D.C., 31 F.Supp. 851; Rosoff Tunnel Corp. v. Higgins, D.C., 28 F. Supp. 880; Allied Agents v. United States, Ct.Cl., 26 F.Supp. 98, certiorari denied 308 U.S. 561, 60 S.Ct. 72, 84 L.Ed. 471; Chicago Telephone Supply Co. v. United States, Ct.Cl., 23 F.Supp. 471, certiorari denied 305 U.S. 561, 59 S.Ct. 92, 83 L.Ed. 402; Oertel Co. v. Glenn, D.C., 13 F.Supp. 651, affirmed 6 ·Cir., 97 F.2d 495.

■ The capital stock tax and the excess profits tax must be construed together, Allied Agents v. United States, supra, and considered in this light the Supreme Court has made these comments:

"It will be observed that by § 215(a) and (f) the declared value of capital stock which is made the basis of computation of both taxes is not required to conform either to the actual or to the nominal capital of the taxpaying corporation; and that the declared value for the first taxable year, with the addition or subtraction of specified items of subsequent capital gains or losses is made the basis of the computation of both taxes in later years. The taxpayer is thus left free to declare any value of capital stock for its first taxable year which it may elect, but since the declared value for the first year is a controlling factor for the

computation of taxes for later years, the statute provides that the declaration once made cannot be amended. Because of the method of computation, increase or decrease in the declared value of capital, and of the corresponding tax, produces, as the case may be, a decrease or an increase in the tax on excess profits.

* * *

"* * * Here the purpose of the statute is unmistakable. It is to allow the taxpayer to fix for itself the amount of the taxable base for purposes of computation of the capital stock tax, but with the proviso that the amount thus fixed for the first taxable year shall be accepted, with only such changes as the statute prescribes for the purpose of computing the capital stock and excess profits taxes in later years. Congress thus avoided the necessity of prescribing a formula for arriving at the actual value of capital for the purpose of computing excess profits taxes, which had been found productive of much litigation under earlier taxing acts, see Sen.Rep. 52, 69th Cong., 1st Sess., pp. 11-12; cf. Ray Consolidated Copper Co. v. United States, 268 U.S. 373, 376, 45 S.Ct. 526, 527, 69 L.Ed. 1003. At the same time it guarded against loss of revenue to the Government through understatements of capital, by providing for an increase in excess profits tax under § 216 ensuing from such understatements." Haggar Co. v. Helvering, 308 U.S. 389, 391, 392, 394, 60 S.Ct. 337, 338, 84 L.Ed. 340.

■ Only one case, Oertel Co. v. Glenn, D.C., 13 F.Supp. 651, has indicated that the capital stock tax statute is legally objectionable if any other but a declaration of actual value were intended thereunder. Other cases conclude that although theoretically any value may be declared, practical self-interest of the taxpayer supplied by the scheme of inter-relation of the capital stock tax and the excess profits tax is statutory assurance that declared value will be founded on reason and fair value. Haggar Co. v. Helvering, supra; Hornell Ice & Cold Storage Co. v. United States, supra; Stromberg-Carlson Mfg. Co. v. McGowan, supra; Mountain Iron Co. v. United States, supra; Allied Agents v. United States, supra. By this scheme a high excess profits tax is intended to neutralize a declaration of low capital stock value and a declaration of high capital stock value is likewise intended to neutralize excess profit taxes.

■ We are likewise not without controlling authority with relation to the contention that the statute confers unwarranted legislative powers upon the taxpayer, there being no method prescribed for the ascertainment of value. The taxpayer is only required to furnish the factual basis for the tax, and no standard is necessary. In addition, he affects no one but himself in his declaration. Accordingly, the cases of Stromberg-Carlson Mfg. Co. v. McGowan, supra; Mountain Iron Co. v. United States, supra; Midvale Paper Board Co. v. United States, supra; Allied Agents v. United States, supra and Chicago Telephone Supply Co. v. United States, supra, have expressly overruled this contention.

■ Plaintiffs point out that the declaration of value for one year is retained in the adjusted declaration for subsequent years, and that the adjusted declaration has every objectionable feature of the original declaration plus the defects in the adjustment scale. In fact, the case of Chicago Telephone Supply Co. v. United States, Ct.Cl., 23 F.Supp. 471, 475, indicated by a dictum that an adjustment on such a basis might transgress constitutional limitations although in dealing with the tax for the year 1934 declared it constitutional. The same court, however, when the question came squarely before it in the case of Allied Agents v. United States, supra, sustained adjusted declarations of value and thus negated its prior dictum. The latter case has been followed in the cases of Midvale Paper Board Co. v. United States, supra and Stromberg-Carlson Mfg. Co. v. McGowan, supra. The basis for this conclusion is that a declaration of actual value is not contemplated under the statute, but only the value the taxpayer is willing to assert. It is admitted that the adjustments are not all-inclusive but reasonably inclusive so that the tax imposed in an adjustment year may not be said to be based on a valuation of capital stock that is arbitrary and unreasonable.

■ The objection that the statute arbitrarily classifies corporations for a special tax and discriminates against other forms of business has also been answered in a prior decision. Hornell Ice & Cold Storage Co. v. United States, supra. The statutes when construed together effect comparably equal assessments on like corporations.

The only new matter to be found in the above complaints which has not been presented to the courts, and which is offered to differentiate this case from prior cases, is

found in the contentions that the capital stock tax is an ad valorem tax and constitutionally objectionable because it has not been apportioned pursuant to Article I, Section 9, Clause 4 of the Constitution providing as follows: "No Capitation, or other direct, tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken." If it is not necessary to apportion this tax, it is claimed that it is an excise tax and void because of its alleged retroactive effect, because it undertakes to exempt corporations not doing business between June 16 and June 30, 1933, and for the reason that Section 215(c) of the Act of 1933 undertakes to provide for a taxable year of only fifteen days (June 16 to June 30, 1933), which allegedly is in conflict with Section 215(a) and (b) imposing a tax for the year ending June 30, 1933.

It has been held that the capital stock tax is an excise tax. Flint v. Stone Tracy Co., 220 U.S. 107, 108, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312, Union Internationale De Placements v. Hoey, 2 Cir., 96 F.2d 591. An excise tax is not required to be apportioned according to population. It need only be uniform and levied for the public welfare. Flint v. Stone Tracy Co., supra.

There remains for consideration only the alleged objectionable features to this tax as an excise tax. The National Industrial Recovery Act of 1933 was enacted on June 16, 1933, and undertook to levy a capital stock tax upon every corporation for the year ending June 30, 1933 with respect to doing business for any part of such year, Section 215(a), but corporations not doing business between June 16 and June 30 were exempt, Section 215(c). The statute does not operate retroactively. It excludes its application to corporations not carrying on or doing business between the date of the enactment and the year ending June 30, 1933. Hence, it can affect no corporations except those in business after the enactment of the statute. Plaintiffs also argue that the statute provides for a taxable year of fifteen days and that the stock taxes for the year ending June 30 should be apportioned. There is nothing in the statute providing for apportionment. On the contrary, it specifically undertakes to levy this tax on a corporation doing business *in any part* of the year preceding June 30, excluding, of course, those corporations not in business after June 15, 1933.

Illustrations have been offered by counsel to show discriminations resulting from the inter-relation of the capital stock act and the excess profits tax. Similar illustrations were considered in the case of Allied Agents v. United States, supra, and were disposed of by the court in that case in the following language: "There are many taxes as to which hypothetical cases can be made up which will present, as between taxpayers, a strong discrimination; but in actual practice the two taxes under consideration are much more likely to work out fairly and with less discrimination than the old excess-profits tax which seldom if ever operated without more or less discrimination and often compelled one taxpayer having the same amount of profits as another to pay many times more taxes than a competitor which was using no greater amount of capital." 26 F.Supp. 98, 102. See also Rosoff Tunnel Corp. v. Higgins, supra, Chicago Telephone Supply Co. v. United States, supra.

We believe that this memorandum has dealt with all pertinent questions raised by the motions to dismiss the complaints in all the cases listed at its head whether the grounds of the complaints overlap or present original propositions, and we find that the motions prevail and each complaint should be dismissed.